1  BRIAN L. JOHNSRUD, State Bar No. 184474
2  JENNIFER LOTZ, State Bar No. 196925
   CURLEY, HURTGEN & JOHNSRUD LLP
3  4400 Bohannon Drive, Suite 230
   Menlo Park, CA 94025
4  Telephone:650.600.5300
   Facsimile: 650.323.1002
5  E-mail: bjohnsrud@chjllp.com
           jlotz@chjllp.com
6
7  Attorneys for Defendant
   MOTION RECRUITMENT PARTNERS, LLC
8
9                 UNITED STATES DISTRICT COURT
10               CENTRAL DISTRICT OF CALIFORNIA
11

| 12 | VICK SAINI, individually and on behalf of all others similarly situated and on behalf of the general public, | Case No. 16-CV-01534 JVS(KES) |
|----|----|----|
| 13 | | **DEFENDANT MOTION RECRUITMENT PARTNERS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT OF THE CLAIMS IN PLAINTIFF VICK SAINI'S CLASS AND COLLECTIVE ACTION COMPLAINT, OR FOR AN ORDER TREATING CERTAIN FACTS AS ESTABLISHED** |
| 14 | Plaintiffs, | |
| 15 | v. | |
| 16 | | |
| 17 | MOTION RECRUITMENT PARTNERS, LLC, a Delaware Limited Liability Corporation, and DOES 1 through 10, inclusive, | |
| 18 | | |
| 19 | Defendants. | |
| 20 | | |
| 21 | | |
| 22 | | DATE:    March 6, 2017 |
| 23 | | TIME:     1:30 P.M.<br>DEPT:    Courtroom 10C |
| 24 | | JUDGE: Hon. James V. Selna |
| 25 | | Complaint Filed:    July 19, 2016 |
| 26 | | (Removed August 19, 2016)<br>Discovery Cut-Off:  December 12, 2017 |
| 27 | | Trial Date:            March 27, 2018 |

28

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

# **TABLE OF CONTENTS**

**Page No.**

I.      INTRODUCTION .................................................................................1

II.     FACTUAL BACKGROUND ...............................................................2

    A.     Motion Recruitment Partners ...................................................2

    B.     December 2015: Saini Submits His Resume To Workbridge And Authorizes Workbridge To Represent Him. .........................2

    C.     January 2016: Saini Interviews For A Project Manager Role At Experian. .............................................................................3

    D.     February 12, 2016: Experian Selects Saini For The Project Manager Role And He Completes Some Of The Pre-Employment Paperwork. .............................................5

    E.     February 19, 2016: Experian Cancels The Project Manager Position And Saini Seeks Legal Counsel...............................6

    F.     February 2016 – April 2016: Saini Interviews For Two Other Positions Through MRP Though Receives No Offers. ...........7

III.    SUMMARY JUDGMENT STANDARD ............................................9

IV.     LEGAL ARGUMENT .......................................................................10

    A.     Summary Judgment Is Proper On Saini's First Claim For Relief Under The FLSA Because Saini Was Never An Employee Of MRP And Performed No Compensable Work For MRP. ..................10

        1.     Job Applicants Are Not Employees Under The FLSA. ............10

        2.     Saini Performed No Compensable Work Under The FLSA. .....11

    B.     Summary Judgment Is Proper On Saini's Second, Third, Fifth, And Sixth Claims For Relief Because Saini Was Not An Employee Of MRP Performing Compensable Work Under California Law. ................................................................15

        1.     Job Applicants Are Not Employees Under California Law. ......15

        2.     Saini Performed No Compensable Work For MRP Under California Law. ...............................................................16

# TABLE OF CONTENTS
## (cont'd)

Page No.

C.   Summary Judgment Is Proper On Saini's Fifth Claim for Failure to Pay All Wages Owed Upon Termination Because There Was A Good Faith Dispute As To Whether Saini Was Owed Any Wages. .................................................................23

D.   Summary Judgment Is Proper On Saini's Sixth Claim for Failure To Provide Accurate Wage Statements Because Any Such Failure Was Not Knowing Or Intentional....................................24

E.   Summary Judgment Is Proper On Saini's Fourth Claim for Failure to Reimburse Expenses Because Saini Was Not Performing Compensable Work. ..........................................24

F.   Saini's Seventh Claim For Violation Of Business And Professions Code Section 17200 Fails As Derivative Of His Prior Claims. ..........................................25

V.   CONCLUSION .............................................25

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

ii

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

# TABLE OF AUTHORITIES

**Page No(s).**

**Cases**

*Amaral v. Cintas Corp.*
163 Cal. App. 4th 1157 (2008) ...............................................................23

*Ballaris v. Wacker Siltronic Corp.*
370 F.3d 901 (9th Cir. 2004)..................................................................11

*Betancourt v. Advantage Human Resourcing, Inc.*
2014 WL 4365074 (N.D. Cal. 2014) ......................................................20

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ...........................................................................9, 10

*Dellinger v. Science Applications International Corp.*
2010 WL 1375263 (E.D. Va. April 2, 2010) ..........................................10

*E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*
590 F.Supp.2d 1244 (N.D. Cal. 2008) ...................................................10

*Fairbank v. Wunderman Cato Johnson*
212 F.3d 528 (9th Cir. 2000)....................................................................9

*Futrell v. Payday California, Inc.*
190 Cal. App. 4th 1419 (2010)................................................................16

*Gunawan v. Howroyd-Wright Employment Agency*
997 F.Supp.2d 1058 (C.D. Cal. 2014) ..................1, 15, 16, 17, 18, 19, 20, 22, 25

*Harris v. Vector Marketing Corp.*
656 F. Supp. 2d 1128 (N.D. Cal. 2009) ...........................................23, 24

*Kroll v. Home Depot U.S.A., Inc.*
2003 WL 23332905 (S.D. Ga. Aug. 20, 2003) .......................................12

*Lewis v. Adecco USA, Inc.*
2014 WL 2516347 (Cal. Super. Jan. 2, 2014) ..................................19, 25

*Martinez v. Combs*
49 Cal.4th 35 (2010)................................................................................16

*Morillion v. Royal Packing Co.*
22 Cal.4th 575 (2000)..............................................................................21

*Nance v. May Trucking Co.*
2014 WL 199136 (D. Oregon Jan. 15, 2014) ...............................11, 13, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Ready Pac Foods, Inc.*
782 F.Supp.2d 1047 (C.D. Cal. 2011) ......................................................9

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

iii

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

1

## TABLE OF AUTHORITIES
### (cont'd)

2

Page No(s).

3

*Nordstrom Commission Cases*
  186 Cal. App. 4th 576 (2010) ......................................................................23

4

*Overton v. Walt Disney Co.*
  136 Cal. App. 4th 263 (2006).......................................................................21

5

6

*Post v. Palo/Haklar & Associates*
  23 Cal.4th 942 (2000)...................................................................................15

7

8

*Reber v. AIMCO/Bethesda Holdings, Inc.*
  2008 WL 4384147 (C.D. Cal. Aug. 25, 2008)........................................23, 24

9

*Sullivan v. Kelly Services, Inc.*
  2009 WL 3353300 (N.D. Cal. 2009) ......................................................20, 21, 25

10

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*
  321 U.S. 590 (1944) .....................................................................................11

11

12

*Watson Labs., Inc. v. Rhone-Pulenc Rorer, Inc.*
  178 F.Supp.2d 1099 (C.D. Cal. 2001) .........................................................10

13

*Williams v. Strickland*
  87 F.3d 1064 (9th Cir. 1996)...................................................................10, 11

14

15

**Statutes**

16

29 C.F.R. § 553.221(b) ......................................................................................11

17

29 C.F.R. § 778.223 ...........................................................................................11

18

29 C.F.R. § 785.7 ...............................................................................................11

19

29 U.S.C. § 203(g) .............................................................................................10

20

29 U.S.C. § 206(a)(1) .........................................................................................10

21

8 Cal. Code Regs. § 11040(2)(E)-(F) ...............................................................16

22

8 Cal. Code Regs. § 11040(K) ..........................................................................16

23

Cal. Code Regs. tit. 8, § 13520 .........................................................................23

24

Cal. Lab. Code § 1194 .......................................................................................15

25

Cal. Lab. Code § 1197 .......................................................................................15

26

Cal. Lab. Code § 203 ....................................................................................15, 23

27

Cal. Lab. Code § 203(a).....................................................................................23

28

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

iv

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

# TABLE OF AUTHORITIES
## (cont'd)

**Page No(s).**

Cal. Lab. Code § 204 ..................................................................................... 15

Cal. Lab. Code § 226 ................................................................................. 15, 24

Fed. R. Civ. P. 56(a) ....................................................................................... 9

**Rules**

Rule 56(g) ......................................................................................................... 9

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

v

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

## I.  INTRODUCTION

Defendant Motion Recruitment Partners, LLC ("MRP") operates as a group of recruitment solution providers, including Workbridge Associates, that connect job seekers with potential job opportunities.  Plaintiff Vick Saini ("Saini") was a job seeker who sought employment through Workbridge while already employed elsewhere.  Saini went on a total of 5 interviews with MRP clients, 3 by telephone and 2 in person.  He was offered a job with one MRP client though the offer was revoked before he started.  Saini's Complaint is predicated on the faulty premise that he should be paid for preparing for, traveling to, and interviewing with MRP clients, completing standard pre-hire paperwork, and discussing positions with his recruiter, and that his mileage and personal cell phone usage associated with these activities should be reimbursed.  Saini's position, if sustained, would turn the staffing industry upside down and stretch the definitions of "employ" and "hours worked" well beyond their intended reach.  Saini was an applicant, not an employee, and should not be paid for time spent trying to get a job.

Indeed, one court in this District, in a thorough and well-reasoned decision, considered and rejected such claims.  *Gunawan v. Howroyd-Wright Employment Agency,* 997 F.Supp.2d 1058, 1066 (C.D. Cal. 2014) .  The Court held that:

> Ultimately then, the Court finds that at the time of her interview . . . [plaintiff] was not an employee of [the temporary agency] performing compensable work under [the California Labor Code].  [Plaintiff] was a prospective employee who, like any other prospective employee, attended an interview to determine whether an offer of employment would be extended to her.  That her interview was arranged through, and its details controlled by [the temporary agency], her eventual employer, is not enough to establish the novel legal proposition that a prospective employee's interview for employment is compensable under California's minimum wage laws.

This Court should follow the reasoning in *Gunawan* (and several other decisions) and hold that time and expense spent trying to get a job is not

compensable.  MRP thus respectfully requests that the Court grant its motion for summary judgment.

## II.     FACTUAL BACKGROUND

### A.     Motion Recruitment Partners

MRP is a limited liability company that operates as a group of leading recruitment solution providers, including Workbridge.  Statement of Uncontroverted Facts ("UF") 1.  Workbridge connects job seekers, like Saini, with potential jobs and its clients with potential workers.  *Id*.  MRP provides these services free of charge and receives no compensation unless and until there is a successful match that results in the worker performing work for a client.  UF 2.

MRP acts as the facilitator between the client and the job seeker.  The client decides which candidates it wants to interview, the manner of the interview (whether by phone or person), the date and time of the interview, the length of the interview, the identity of the interviewers, and the questions to be asked.  UF 3.  Job seekers can accept or decline interview requests based on their interest and availability with no adverse consequences to pursuing other opportunities through MRP.  UF 3, 5-29, 49-51, 55-70.

MRP does not attend or participate in the interviews or direct the job seeker's actions during the interview.  UF 3, 15-27, 50-53, 61-70.  The job seeker is free to decide where to take a telephone interview, when and how to travel to an in- person interview, how to respond to the questions asked, and whether to terminate an interview.  *Id.*

The client makes the hiring decisions and sets the rate of pay and other terms of the position, such as the length of the contract for a temporary role.  UF 4, 30-33.

### B.     December 2015: Saini Submits His Resume To Workbridge And Authorizes Workbridge To Represent Him.

Saini is a Project Manager with experience managing software projects.  UF 5.  On December 16, 2015, Saini submitted his resume for an IT Project Manager

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

2

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

position available through MRP posted on Indeed.com. *Id.* At the time, Saini was employed full-time by Centric Sky and was looking for work because his employer was "in trouble" and had laid off some people. UF 6-7.

That same day, Saini was contacted by a Workbridge Recruiter, Kyle Nowicki, to discuss his background and experience, reasons for seeking work, and what he was looking for. UF 8-9. Nowicki "got the background information to make sure that [Saini was] looking for a job so he can place [Saini] with his client." *Id.; see also* Declaration of Brian Johnsrud ("BJ Dec.") ¶ 2, Ex. A (Vick Saini Transcript ["VS Tr."] 33:1-34:4.)

Nowicki then asked Saini for permission to submit him to two jobs, stating:

> So, there are actually 2 roles I want to get you out to. . . . Let me know if you would like to apply for both. . .
>
> To submit to Experian, I need you to sign a right to represent. (Project Manager Role).

UF 10. Saini quickly responded, stating:

> I, ___ Vick Saini _____ give Motion Recruitment Partners the right to represent me for EXPNJP00001032.

UF 11.

### C.  January 2016: Saini Interviews For A Project Manager Role At Experian.

On January 15, 2016, Nowicki contacted Saini again asking for authorization for MRP to represent Saini in connection with a Project Manager role at Experian. UF 12. Saini again consented, giving MRP "the right to represent [him] for EXPNJP00001081." UF 13. Nowicki submitted Saini's resume without alteration other than to remove Saini's personal contact information. UF 14.

A few days later, Experian requested a half-hour phone interview with Saini on January 21st. UF 15. Saini was interested in the position and accepted the request. *Id.* Saini could have declined the interview with no adverse consequences

to pursuing other opportunities through MRP. *Id.* (Declaration of Kyle Nowicki ["KN Dec."] ¶ 3).

Nowicki provided Saini with the name of the interviewer, a link to the interviewer's LinkedIn profile, and the date and time of the interview. UF 16. He also informed Saini that the interview would "most likely be project manager technical related due to speaking with the Senior Business Analyst/Product Owner at Experian." *Id.* (VS Tr. at Ex. 5, MRP-000029). Saini thanked Nowicki for the information, stating that he "look[ed] forward to talking to Experian." *Id.* Nowicki wished Saini good luck and asked him to "please call me after the interview so I can get some feedback and hear how it went." *Id.*

On January 21, 2016, Saini interviewed for the position by phone using his personal cell phone. UF 17. The interview lasted around one hour. *Id.* No one from MRP was on the call. UF 18. Following the interview, Saini talked with Nowicki and expressed his continued interest in pursuing the role. UF 19.

The next day, Experian requested a 2-hour in-person interview with Saini. UF 20. Nowicki again facilitated this request by confirming the date, time, and location of the interview with Saini, along with the identities of the interviewers and links to their LinkedIn profiles. UF 21. Nowicki went on to state: "I wish I had more information regarding the interview but I an un-able to get any other notes/feedback. I know that you will do just fine as long as you discuss prior work projects/success and have a positive outgoing attitude." *Id.* (VS Tr. at Ex. 6, MRP-000040). Saini thanked him for "the detailed information." *Id.* Saini was interested in "continuing conversations" about the role which involved "technologies that [he] liked to be involved with." UF 19.

One week later, Saini interviewed at Experian's offices. UF 22, 24. The interview lasted approximately three hours. *Id.* No one from MRP was present. UF 23. Saini traveled there in his own vehicle and was free to leave at any time if he decided that "this job is not for me." UF 25-26.

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

4

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

According to Saini, he was required to check in with Nowicki both before and after the interviews to discuss how the interview went, who he met with, and the questions asked. BJ Dec. ¶ 2, Ex. A (VS Tr. 51:3-51:19). Nowicki also gave Saini advice and insight on "the business side of things," such as how to dress for the interview, and recommending following up with a thank you note to position Saini favorably for the roles. *Id.* (VS Tr. 55:13-57:14, 150:18-23, 151:8-14, Ex. 8).

Following his in-person interview with Experian, Saini expressed his continued interest in the position and provided Nowicki with his references, but asked him to contact them only "if the company decide to hire [Saini] as part of [his] background check, Drug exam, financial, criminal, etc." UF 27-28.

In late January and early February 2016, Saini reached out to Nowicki for an update on the status of Experian, showing his strong interest in the role (and the voluntary nature of his application). UF 29. Nowicki responded that he had "[p]inged them a few times, be patient we should hear soon! Thanks for waiting on Experian!" *Id.* (VS Tr. at Ex. 7, MRP-000042).

**D.    February 12, 2016: Experian Selects Saini For The Project Manager Role And He Completes Some Of The Pre-Employment Paperwork.**

On February 12, 2016, Experian submitted a work order selecting Saini for the Project Manager role. UF 30. This temporary position was scheduled to start on February 22, 2016 and last for six months. UF 31. Saini verbally accepted the offer and made arrangements to meet Nowicki at Workbridge's offices to sign some paperwork and provide documentation for his I-9 Form. UF 34. Saini was "excited for this opportunity" and thanked Nowicki for the "great follow up." UF 35.

That same day, a Work Order was submitted for position, stating:

> Job Seeker has been selected for hire and a Work Order has been created for it. . . . <u>Please do not accept the work order until all pre-employment checks are completed</u>.

UF 32 (emphasis added). Experian required both a background check and a drug

test as conditions of starting work.  UF 33.  Two days later, MRP sent Saini a link to an online portal to complete a background check consent and other standard pre-employment forms at his convenience so that he would be able to start work at Experian immediately upon passing the drug test and background check.  UF 36. Nowicki received notification that Saini's on-boarding status has been updated to "In Progress."  UF 37.

A few days later, Saini completed various pre-employment forms, including a background check authorization, a Form W-4, an Employee Handbook Acknowledgement Form, an Insurance Refusal Form, a Direct Deposit Authorization and Agreement, an Equal Employment Opportunity Data Form, a Form W-4 Confirmation for California, an Emergency Contact Form, and a Notice to Employee Labor Code Section 2810.5.  UF 38.  Saini completed these forms online and signed and submitted them electronically.  UF 39.  Saini's Complaint makes much of the fact that certain of these forms refer to Saini as the "employee" and to MRP as the "employer."   BJ Dec. ¶ 2, Ex. A (VS Tr. 161:4-14, 161:22-162:21, Ex. 44 at ¶¶ 17-18).  However, completing these forms was merely one step in the onboarding process.  In order to begin work at Experian, Saini also needed to pass a background check and drug test, present the required documentation for his I-9 Form, and sign an Agreement for Supplying Temporary Employment Services ("PTE") with MRP.  UF 30-33, 37-48, 73-74.  As discussed below, Saini never completed these other steps.  *Id.*

### E.    February 19, 2016: Experian Cancels The Project Manager Position And Saini Seeks Legal Counsel.

On February 19, 2016, Experian (not MRP) cancelled the position that had been offered to Saini.  UF 40.  Nowicki re-scheduled Saini's visit for the following Monday (February 22), and Saini was informed later that day that the job had been pulled by the client.  UF 41.  That evening, Saini emailed Nowick stating that he was "extremely frustrated" about finding this out after he had "already left [his]

employer and given notice." UF 40 (VS Tr. at Ex. 25-A, MRP-000088). Shortly thereafter, Saini sought legal counsel. BJ Dec. ¶ 2, Ex. A (VS Tr. 88:15-89:1).

As a result, Saini never went to Workbridge's offices, never met Nowicki in person, never provided the required documentation to complete the I-9 Form, and never signed the PTE, which remained in draft form and was never even presented to Saini. UF 41-43.

At the time Experian cancelled Saini's role, MRP had not received the results of Saini's background check or drug screening report. UF 45-47. Thereafter, Saini received an email from HireRight stating that it was unable to verify certain information for his background check and requesting further information. UF 46. Nowicki then received a notification that Saini's background check had been cancelled. UF 47.

Thus, at the time Experian cancelled the Project Manager role, Saini had not completed the onboarding process to start work at Experian. UF 30-33, 37-48, 73-74. It is undisputed that there was no PTE in place between MRP and Saini, nor any agreement (verbal or written) that Saini would receive any compensation whatsoever from MRP for interviewing or other pre-employment activities. UF 43, 77-80. Indeed, while Saini claims that he asked Nowicki whether he should be getting paid for his pre-hire activities, he admits that Nowicki never got back to him. UF 77 (VS Tr. 143:2-144:21). MRP's Temporary Employee Handbook makes clear that "time worked is all time actually spent on the job performing assigned duties." UF 78. Saini admits that he never performed any project management duties for Experian or any other MRP client, nor did he perform any recruiting duties for Workbridge. UF 79-80.

**F.     February 2016 – April 2016: Saini Interviews For Two Other Positions Through MRP Though Receives No Offers.**

Between February and April 2016, Saini continued to use MRP's services to try to find work. UF 49. In late February, Saini had a 40 to 60 minute telephone

interview for an IT Project Manager position at Hoag Memorial Hospital for a contract role that would have lasted 3-6 months.  UF 50-53.  He was not offered the job.  UF 54.

In early March 2016,  Nowicki contacted Saini regarding a Project Manager 3 position at Experian, stating: "If you would like me to get you in the mix for this please put your name below. To submit to Experian, I need you to sign a right to represent. (Project Manager 3 Role)."  UF 55.  Saini replied that same day, stating: "Yes go ahead and submit me to the job below.  Thank you," and inserted his name in the right to represent request.  UF 56.

Two weeks later, Saini again authorized Nowicki to represent him for two other potential Experian roles.  UF 57-60.

In the latter part of March 2016, Nowicki confirmed that Saini was set for a half-hour phone interview with Experian.  UF 61.  Saini participated in this interview on March 24th using his personal cell phone.  UF 62.  It lasted approximately 40 minutes and no one from MRP was present.  UF 62-63.

Experian then requested a 2-hour in-person interview with Saini, which was scheduled for Tuesday, April 5, 2016.  UF 64-65.  Saini informed Nowicki that he was not available on that date because he had "an interview in LA on Tuesday" and Nowicki had communicated that the interview would be on Monday, not Tuesday.  UF 66.  Saini told Nowicki to "[p]lease do let Experian know your error so they can reschedule it."  *Id.*  The interview was rescheduled for April 6, and Nowicki confirmed logistics with Saini, including the date and time, the identities of the interviewers, and the interview schedule.  UF 67.  On April 5, Nowicki updated Saini on who he would be meeting with.  *Id*.

On April 6, Saini interviewed for the Project Manager 3 role at Experian's offices.  UF 68.   He traveled there in his own vehicle and the interview lasted over two hours.  UF 68-69.  No one from MRP was present, and Saini could have terminated the interview at any time if he felt "this job is not for me."  UF 26, 70.

1  　　　As with Saini's prior interviews through MRP, the clients (not MRP)

2  determined whether to interview Saini, the manner of the interview (by phone or

3  person), the date and time of the interview, the length of the interview, the

4  interviewers, and the questions to be asked.  UF 3.  MRP did not attend or

5  participate in any of the interviews or direct Saini's actions during the interview.

6  UF 50-53, 61-70.  In fact, as Saini admits, most of the questions asked were

7  "technical questions" and "I'm more technical than [Workbridge]."  UF 24 (VS Tr.

8  150:18-23, 151:8-14).  Saini was not offered any of these potential roles. UF 54, 71.

9  　　　Therefore, in total, Saini participated in two in-person and three telephone

10  interviews, which resulted in one offer for a position that was cancelled by the

11  client.  UF 5-71.  Saini never went to work for any client of MRP, never advanced

12  from candidate status to placement status in MRP's system, and never completed

13  any time sheets.  UF 73-76, 79.  Following mid-April 2016, Saini had no further

14  interviews through MRP.  UF 72.  MRP has received no compensation from

15  Experian or any other client related to Saini.  UF 2, 81-82.

16  **III.    SUMMARY JUDGMENT STANDARD**

17  　　　Summary judgment is appropriate if there is "no genuine dispute as to any

18  material fact" and the moving party is "entitled to judgment as a matter of law."

19  Fed. R. Civ. P. 56(a).  To satisfy this burden, it is sufficient for MRP to point to an

20  absence of evidence supporting an essential element of Saini's claims.  *See Celotex*

21  *Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Fairbank v. Wunderman Cato Johnson*,

22  212 F.3d 528, 532 (9th Cir. 2000).  Here, each of Saini's claims for relief fails

23  because the uncontroverted facts establish that Saini was not an employee of MRP

24  and performed no compensable work for MRP.

25  　　　Alternatively, under Rule 56(g), partial summary judgment is appropriate as to

26  specific issues if it will narrow the issues for trial, including narrowing damages

27  claims.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Ready Pac Foods, Inc.,* 782

28  F.Supp.2d 1047, 1052 (C.D. Cal. 2011); *Watson Labs., Inc. v. Rhone-Pulenc Rorer,*

*Inc.,* 178 F.Supp.2d 1099, 1131, 1123 (C.D. Cal. 2001). The "purpose of partial summary judgment 'is to isolate and dispose of factually unsupported claims or defenses.'" *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.,* 590 F.Supp.2d 1244, 1250 (N.D. Cal. 2008) (quoting *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ). Thus, even if the Court determines that there is any genuine dispute as to whether Saini was an employee of MRP (which he was not) or performed any compensable work for MRP (which he did not), the Court can and should narrow the scope of activities as to which Saini could claim compensation.

## IV.    LEGAL ARGUMENT

### A.    Summary Judgment Is Proper On Saini's First Claim For Relief Under The FLSA Because Saini Was Never An Employee Of MRP And Performed No Compensable Work For MRP.

#### 1.    Job Applicants Are Not Employees Under The FLSA.

In order for liability to attach under the Fair Labor Standards Act ("FLSA"), MRP must be Saini's employer. *See Williams v. Strickland,* 87 F.3d 1064, 1066 (9th Cir. 1996) (citing 29 U.S.C. § 206(a)(1)). It is well-settled that that a job applicant, like Saini, is not an "employee" under the FLSA. As one District Court stated, "[w]ithout reading beyond the plain language of the statute, a job applicant cannot be considered an 'employee.'" *Dellinger v. Science Applications International Corp.*, No. 1:10cv25 (JCC), 2010 WL 1375263, at *4 (E.D. Va. April 2, 2010) (on facts similar to those at issue herein, granting defendant's 12(b)(6) motion to dismiss); *see also* 29 U.S.C. § 203(g).

The undisputed facts demonstrate that Saini was never anything more than an applicant for employment. At the time Saini submitted his resume and interviewed with Experian, Saini was employed full-time and was looking for work because his employer was "in trouble" and had laid off a few employees. UF 5-7. Saini never started work with any client of MRP and never completed any time sheets because the position he was offered was cancelled. UF 30-48, 54, 71, 73-76, 79-80. When

1   the role was cancelled, Saini had not completed the onboarding process to start

2   work at Experian.  UF 30-48, 73-74.  Saini never signed a PTE with MRP, never

3   provided the documentation for his I-9 Form, and the required background check

4   was incomplete.  *Id.*  Indeed, Saini admits that he was **not** employed between his

5   position at Centric Sky, which ended in February of 2016, and his current role,

6   which started in March of 2016.  BJ Dec. ¶ 2, Ex. A (VS Tr. 18:18-19:24).  For this

7   reason alone, summary judgment is proper on Saini's first claim for relief.

8           **2.      Saini Performed No Compensable Work Under The FLSA.**

9           Assuming for the sake of argument that Saini could raise a triable issue as to

10  whether he was an MRP employee (which he cannot), summary judgment remains

11  proper because Saini did not perform any compensable work under the FLSA.

12  Federal regulations implementing the FLSA define "hours worked" to include:"(a)

13  all time during which an employee is required to be on duty or to be on the

14  employer's premises or at a prescribed workplace and (b) all time during which an

15  employee is suffered or permitted to work whether or not he is required to do so."

16  29 C.F.R. § 778.223; *see also* 29 C.F.R. §§ 553.221(b), 785.7.  The Supreme Court

17  has defined "work" to include any time "controlled or required by the employer <u>and</u>

18  pursued necessarily and primarily for the benefit of the employer and his business."

19  *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64

20  S.Ct. 698, 88 L.Ed. 949 (1944) (emphasis added; footnote omitted).  Courts in the

21  Ninth Circuit focus on:  (1) whether the defendant received an "immediate

22  advantage" from the plaintiff's alleged work; and (2) whether there was an express

23  or implied agreement for compensation.  *Nance v. May Trucking Co.,* No. 3:12–cv–

24  01655–HZ, 2014 WL 199136, *5 (D. Oregon Jan. 15, 2014) (citing *Williams v.*

25  *Strickland,* 87 F.3d 1064, 1066 (9th Cir. 1996)).  Critically, where there is no

26  dispute over the nature of the activities at issue, whether those activities constitute

27  "hours worked" under the FLSA is a question of law.  *Ballaris v. Wacker Siltronic*

28  *Corp.,* 370 F.3d 901, 910 (9th Cir. 2004).

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

11

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

1    Here, while conceding that he never went to work for a MRP client, Saini

2    claims to have performed the following "work" for MRP: (1) preparing for,

3    traveling to, and attending telephone and in-person interviews with MRP clients;

4    (2) filling out pre-employment paperwork; (3) receiving an "orientation" from

5    Workbridge (which consisted of a brief telephone overview of Workbridge's

6    services, processes, and procedures during an introductory call with Nowicki and,

7    subsequently, after receiving an offer from Experian); (4) attending "mandatory

8    meetings" (specifically, calling his recruiter before and after interviews to prepare

9    and de-brief); and (5) being placed with Experian, though no substantive work was

10   performed.  BJ Dec. ¶ 2, Ex. A (VS Tr. 145:15-21, 146:4-149:11, 153:14-154:12,

11   173:23-175:23, Ex. 44 at ¶¶ 19-20, 23-24).  The uncontroverted facts demonstrate

12   that these standard pre-employment activities were not for MRP's "immediate

13   advantage."  MRP received no compensation, income, or benefit from the mere fact

14   that Saini interviewed for potential roles, and it never had any agreement with

15   Saini, express or implied, that he would be paid for these activities.  UF 2, 5-82.

16       Notably, District Courts have rejected similar claims seeking compensation

17   for traveling to and participating in interviews and orientation sessions, holding that

18   such voluntary activities primarily for the benefit of the applicant did not constitute

19   "work."  For example, in *Kroll v. Home Depot U.S.A., Inc.,* the court granted the

20   defendant's motion for summary judgment and held that plaintiff (who, unlike Saini,

21   was already a Home Depot employee) was not entitled to wages under the FLSA for

22   travel time to an interview for a position at another Home Depot store because

23   plaintiff "was not required to interview for the position" and "any promotion she

24   received would be primarily for her own benefit, not that of Home Depot."  *Kroll,*

25   *No. Civ.A CV202-113, 2003 WL 23332905, at \*5 (S.D. Ga. Aug. 20, 2003).*

26       In this case, likewise, any job Saini obtained through MRP would have been

27   primarily for his own benefit.  Saini was applying for jobs he was interested in with

28   "technologies that [he] liked to be involved with" and stood to receive valuable

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

12

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

compensation if he was hired.  UF 5-29, 35, 49-70.  Saini was not required to use MRP's services to find work.  Saini reached out to MRP by submitting his resume through Indeed.com for a job he wanted.  UF 5-7.  Nowicki needed a signed "right to represent" to even submit Saini for consideration, showing that Saini controlled every step of the process, from deciding whether to submit his resume, to whether to accept an interview, to whether to accept any offer that was made.  UF 5-35, 49-71.  Saini did not pay MRP to help him find a job, and MRP would not receive any compensation unless and until Saini performed work for a MRP client, which he never did.  UF 2, 77-82.  Incidental activities, such as Saini's research prior to the interviews and the time spent on the phone with Nowicki to prepare for and de-brief from the interviews, were also for Saini's own benefit to make him a better-prepared candidate for jobs he wanted.  According to Saini, "[i]t's well known in IT.  It takes a few hours minimum to be prepared for the IT [interview] because they drill you on everything."  BJ Dec. ¶ 2, Ex. A (VS Tr. 93:13-94:4).

With respect to the alleged "orientation" (which is a misnomer because it was nothing more than a brief 15-minute telephone overview of Workbridge, its services, and its processes during Saini's initial call with Nowicki, and a subsequent overview of MRP's benefits and procedures after Saini received an offer from Experian) and time spent completing pre-employment paperwork, District Courts have found much more substantive orientations non-compensable.  In *Nance v. May Trucking Co.*, for example, the court granted summary judgment, holding that individuals who attended 2- and 4-day orientations in which they completed testing, including drug, road, and physical, and learned to safely operate a truck were not employees, stating:

> Plaintiffs did not haul any loads for May Trucking and May Trucking's regular employees were not displaced during orientation. Plaintiffs were not paid to attend orientation and there was no agreement, implied or express, that Plaintiffs would be paid for their time at orientation.  In light of these undisputed facts, I find that Defendant did not receive any immediate advantage as a result of

Curley, Hurtgen & Johnsrud llp
Counselors At Law
Menlo Park

13

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

Plaintiffs' attendance at orientation.  Thus, Plaintiffs Nance and Freedman were not employees of May Trucking during orientation. *Nance,* No. 3:12–cv–01655–HZ, 2014 WL 199136, *5 (D. Oregon Jan. 15, 2014).

Saini admits that he never performed any technical project management duties for MRP or any of its clients, nor did he perform any recruiting duties for MRP.  UF 79-80.  Saini merely participated in 3 telephone interviews and 2 in-person interviews for jobs he was interested in, did some research to prepare himself for these interviews, completed some standard pre-hire paperwork online, took a required drug test, and communicated with Nowicki about available positions, interview logistics, and MRP's services.  UF 5-72.

Further, there was no agreement, express or implied, that Saini would be compensated for his time during the application process.  UF 43, 77-78.  While Saini claims to have asked Nowicki whether he "should be getting paid for this," Saini concedes that Nowicki never responded and Saini never brought it up again, thus confirming the absence of any such agreement.  UF 77 (VS Tr. 143:2-144:21).  Moreover, MRP's Employee Handbook, which Saini acknowledges reading and receiving, makes clear that "time worked is all time actually spent on the job performing assigned duties," which Saini admits he never did.  UF 73-80.  Saini did not pay MRP to help him find work, and MRP has received no compensation from Experian or any other client related to Saini.  UF 2, 81-82.

Because the uncontroverted facts establish that MRP received no "immediate advantage" from Saini's alleged work and there was no express or implied agreement that Saini would be paid for this time, summary judgment is proper on Saini's first claim for relief.  Alternatively, if the Court declines to grant summary judgment, MRP requests an order stating that one or more of the activities for which Saini seeks compensation are non-compensable as a matter of law.

**B.     Summary Judgment Is Proper On Saini's Second, Third, Fifth, And Sixth Claims For Relief Because Saini Was Not An Employee Of MRP Performing Compensable Work Under California Law.**

Saini also alleges four separate claims under California law based on his purported status as an "employee" of MRP entitled to compensation for "hours worked," including: (1) his second claim for relief for failure to pay wages for hours worked under Labor Code § 204 and the Wage Orders; (2) his third claim for relief for failure to pay minimum wage in violation of Labor Code §§ 1194 and 1197; (3) his fifth claim for relief for failure to pay wages upon termination of employment in violation of Labor Code § 203; and (4) his sixth claim for relief for failure to provide itemized wage statements in violation of Labor Code § 226. (Dkt. No. 1, Ex. A at ¶¶ 37-49, 50-54, 75-78.)  These claims, like Saini's FLSA claim, require Saini to establish that he was an employee of MRP and that he performed compensable work for MRP, which he cannot do.

**1.     Job Applicants Are Not Employees Under California Law.**

The California Labor Code and the Wage Orders on which Saini relies in support of his second, third, fifth, and sixth claims for relief apply only to employees, not job applicants like Saini.  *See Gunawan,* 997 F.Supp.2d at 1063 ("Quite clearly, the statute contemplates that only an employee, and not a prospective employee or applicant for employment, can recover . . ."); *see also Post v. Palo/Haklar & Associates,* 23 Cal.4th 942, 947 (2000) ("[A]s a predicate for awarding a claim for unpaid wages, the commissioner must necessarily determine that the claimant was an employee."); Cal. Lab. Code §§ 203; 204; 226; 1194; 1197 (each of which reference only employees).

Saini's claims fail because the undisputed facts establish that Saini was never anything more than a job applicant.  At the time Saini submitted his resume and interviewed with Experian, Saini was employed full-time by Centric Sky.  UF 5-7. Saini never started work with any client of MRP and never submitted any time

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE ALT., PARTIAL SUM. JUDGMENT (CASE NO. 16-CV-01534 (KES))

sheets because the only position he was offered was cancelled.  UF 30-48, 54, 71, 73-76, 79-80.  Saini never even completed the onboarding process to start work at Experian.  UF 30-48.  He never signed a PTE with MRP, never provided the documentation for his I-9 Form, and his background check was incomplete.  *Id.; see also Gunawan,* 997 F.Supp.2d at 1063 (granting defendant employment agency's motion for summary judgment on claims based on time spent interviewing with agency clients because, as a job applicant, plaintiff "was not an employee . . . performing compensable work"); *see also* Request for Judicial Notice ("RJN") at Ex. A (*Welch-Hess v. Remedy Temporary Services*, San Diego County Sup. Court Case No. GIC 806820, at pp. 3-4 (July 19, 2006) [holding that applicants for employment through a temporary agency were not employees unless they were on assignment with a client of the agency]).  Thus, summary judgment is proper on Saini's second, third, fifth, and sixth claims.

## 2.    Saini Performed No Compensable Work For MRP Under California Law.

Alternatively, summary judgment is proper on Saini's second, third, fifth, and sixth claims because Saini performed no compensable work for MRP.  The relevant Wage Order defines an "employee" as "any person employed by an employee" and further provides that to "employ" means to "engage, suffer, or permit to work."  *Gunawan,* 997 F.Supp.2d at 1063 (quoting 8 Cal. Code Regs. § 11040(2)(E)-(F)).  Under the Wage Order, " 'hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  8 Cal. Code Regs. § 11040(K).  "In determining the nature of the employment relations, a primary inquiry of California courts is whether the alleged employer exercised or had the right to exercise control over the alleged employee."  *Gunawan,* 997 F.Supp.2d at 1063 (citing *Martinez v. Combs,* 49 Cal.4th 35 (2010); *Futrell v. Payday California, Inc.,* 190 Cal. App. 4th 1419 (2010)).

1    As with his FLSA claim, Saini claims an entitlement to compensation under

2  California law for engaging in various standard pre-employment activities.  The

3  uncontroverted facts demonstrate that none of this time is compensable.

4    *First,* as to Saini's claim that he is entitled to compensation for preparing for,

5  traveling to, and participating in interviews with MRP clients, the *Gunawan*

6  decision is directly on point.  In *Gunawan,* as in the instant case, the plaintiff sought

7  employment through a temporary employment agency and, like Saini, alleged that

8  she was entitled to compensation for time spent interviewing with clients of the

9  agency for temporary positions.  The Court granted the agency's motion for

10  summary judgment, holding that the plaintiff was not entitled to minimum wage,

11  itemized wage statements, or waiting time penalties because:

12    In going to the interview . . ., [plaintiff] was not under [the agency's]
     control such that her time was not her own.  [Plaintiff] was not
13    required to attend the interview . . ., but rather, did so voluntarily.
     There is no evidence that if she chose not to attend the interview, that
14    [she] would be precluded from any other employment opportunities
     through [the agency].  There is no evidence that [the agency] had
15    control over the questions asked to [plaintiff], or more importantly,
     over the answers she provided.  There is no evidence that [the agency]
16    had control over the length of the interview, or that [the agency]
     required [plaintiff] to act in a certain manner while she was there.
17
18

19  *Gunawan,* 997 F.Supp.2d at 1063.

20    The *Gunawan* decision specifically rejected the plaintiff's argument that she

21  was under the agency's control merely because the agency restricted

22  communications between plaintiff and the potential employer, modified her resume

23  to include its own name and contact information, and set the time and place of the

24  interview as well as the rate of pay for the position.  *Gunawan,* 997 F.Supp.2d at

25  1063-1064.  In this case, likewise, the uncontroverted facts establish that Saini was

26  not under MRP's control when he participated in interviews.  MRP, like the agency

27  in *Gunawan,* acted as an intermediary between Saini and its clients.  UF 1-72.

28  MRP did not control the interview process.  UF 3, 15-27, 50-53, 61-70.  The client

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

17

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1  decided whether to interview Saini, the manner of the interview (whether by phone
2  or in person), the date and time of the interview, the length of the interview, the
3  interviewers, and the questions to be asked.  *Id.*  MRP also did not attend or
4  participate in any of the interviews or direct Saini's actions during the interview
5  (nor could it as Saini admits that most of the questions asked were "technical
6  questions" and "I'm more technical than [Workbridge]").  *Id.; see also* UF 24 (VS
7  Tr. 149:23-150:23, 151:8-14).  Saini was free to determine where and how to
8  participate in the telephone interviews, when and how to travel to the in-person
9  interviews, how to respond to the questions asked, and whether to terminate the
10 interview process.  UF 15-27, 50-53, 61-70.

11     Despite Saini's unsubstantiated belief that he was "required" to participate in
12 interviews, the uncontroverted evidence shows that his participation was voluntary.
13 Saini reached out to MRP by submitting his resume through Indeed.com.  UF 5-7.
14 Saini was not required to use MRP's services to obtain work.  He was applying for
15 roles he was interested in with "technologies that [he] liked to be involved with "
16 and stood to receive valuable compensation if he was hired.  UF 5-29, 35, 49-70.
17 Nowicki needed a "right to represent" to even submit Saini for consideration, and
18 Saini admits that he could have terminated the interview process at any time if he
19 felt "this job is not for me."  UF 10-13, 26 (VS Tr. 145:3-10), 55-60.

20     The mere fact that MRP's clients set the time, place, and location of the
21 interview does not demonstrate the requisite control.  *Gunawan,* 997 F.Supp.2d at
22 1063-1064.  While Saini claims that some of the interview times were not to his
23 liking, these times were dictated by the client's desire to "move fast," and Nowicki
24 merely recommended that he take the proposed time slot if he wanted the job.  BJ
25 Dec. ¶ 2, Ex. A (VS Tr. 39:8-41:1).  Saini, in fact, requested that his in-person
26 interview with Experian for the Project Manager 3 role be re-scheduled due to a
27 scheduling conflict and this request was accommodated.  UF 64-68.  He also admits
28 that he got the date of his choice for his first in-person Experian interview, though

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

18

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1  would have preferred a different time.  BJ Dec. ¶ 2, Ex. A  (VS Tr. 45:22-46:6).

2  Had Saini declined an interview, he would not have been precluded from pursuing

3  other available positions through MRP.  KN Dec. ¶ 3.  To the extent interviews

4  went beyond their anticipated lengths, this too was dictated by the client due to

5  availability of the interviewers and discussions running over schedule.  BJ Dec. ¶ 2,

6  Ex. A (VS Tr. 47:23-51:2).

7        Finally, while Saini claims he felt "controlled" by MRP because he was

8  given limited choices as to interview times and Nowicki recommended that he write

9  a thank you note, give one week's notice to Centric Sky, and dress in business

10  casual attire for the interview, this basic guidance from MRP to help position Saini

11  for success does not transform Saini from an applicant into an employee.  BJ Dec. ¶

12  2, Ex. A (VS Tr. 39:8-41:1, 55:13-57:14, Ex. 8, 65:20-66:21, 150:18-151:7); *see*

13  *Gunawan,* 997 F.Supp.2d at 1063-1064.  Like the plaintiff in *Gunawan,* if Saini did

14  not want to use MRP's services, he could have declined to move forward.  Even

15  Saini admits that the reason he purportedly felt "controlled" by MRP was because

16  he needed to follow certain protocols if he wanted "to be considered for the role."

17  BJ Dec. ¶ 2, Ex. A (VS Tr. 115:3-14).  This would be true of any applicant applying

18  for any job.

19        Further, Saini's interview time cannot be considered "work" as a matter of

20  law because it is distinct from the technical project management duties Saini would

21  have performed had he been hired for one of the positions he applied for:

22        The court concludes that because an interview is clearly distinct from
23        the work to be performed if and after the interviewee is placed in a
        temporary assignment, it cannot be considered "work" in the common
24        law sense, even when the actual employer is a temporary services
        provider rather than the party requiring the interview.
25

26  *See* RJN at Ex. B (*Lewis v. Adecco USA, Inc.,* 2014 WL 2516347, at *3 (Cal. Super.

27  Jan. 2, 2014) (granting motion for summary judgment on claims brought by

28

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

19

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

1    applicant of a temporary agency for alleged failure to pay minimum wage, waiting

2    time penalties, reimbursement of expenses, failure to provide accurate itemized

3    wage statements, and violation of §17200)).

4         MRP anticipates that Saini will rely on two unpublished cases, *Sullivan v.*

5    *Kelly Services, Inc.*, No. C 08-3893 CW, 2009 WL 3353300 (N.D. Cal. 2009), and

6    *Betancourt v. Advantage Human Resourcing, Inc.*, Case No. 14-cv-01788-JST, 2014

7    WL 4365074 (N.D. Cal. 2014), to argue that interview time is compensable.  These

8    Northern District cases are not persuasive and are not binding on this Court.  The

9    *Gunawan* decision rejected the reasoning of *Sullivan* which subsequently was

10   followed in *Betancourt*.  *See Gunawan*, 997 F.Supp.2d at 1065 ("[T]he Court is

11   unpersuaded by *Sullivan*'s implicit finding that an individual who voluntarily attends

12   an interview arranged by a temporary services agency is under the control of the

13   temporary services agency such that he or she can be considered to perform

14   compensable work.").

15        Further, *Sullivan* is readily distinguishable because, at the time of interviews,

16   the plaintiff (unlike Saini) had already completed an assignment with one of the

17   agency's clients.  Notably, in finding the interview time compensable, the court in

18   *Sullivan* determined that "Plaintiff's employment relationship with Defendant began

19   on . . . .her first day of her first temporary assignment with Defendant's customer."

20   *Sullivan*, 2009 WL 3353300, at *1.  Here, Saini never had a first day with any MRP

21   client because the only position he was offered was cancelled before he started work.

22   UF 30-48, 54, 71, 73-76, 78-80.

23        *Betancourt* is also distinguishable in that (1) the plaintiff was required to

24   complete the full on-boarding process and become an employee of the temporary

25   agency *before* being allowed to go out on any interviews; and (2) the issue was

26   decided in the context of a motion to dismiss with the court holding only that the

27   plaintiff had alleged facts sufficient to establish an employment relationship and the

28   performance of compensable work.  *Betancourt*, 2014 WL 4365074, at *7.

Curley, Hurtgen & Johnsrud llp
Counselors At Law
Menlo Park

20

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

*Second,* Saini's travel time to and from interviews was not "hours worked"
because the uncontroverted facts establish that Saini could "effectively use [his]
travel time for [his] own purposes." *See Sullivan,* 2009 WL 3353300, at \*5-\*6
(quoting *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 586 (2000)).  Saini
traveled to these interviews using his own vehicle and could decide when to leave,
what route to take, and what to do both before and after the interview.  UF 20-26,
64-70.  Therefore, Saini's travel time is not compensable.  *See Morillion,* 22 Cal.4th
at 586-587 (employees who commute to work on their own can use the time
effectively for their own purposes by deciding when to leave, which route to take,
which mode of transportation to use, and whether to run errands before work and
leave work early); *Overton v. Walt Disney Co.,* 136 Cal. App. 4th 263, 271 (2006)
(employees who were not required to take employer-provided shuttle to and from
work were not entitled to compensation for time spent taking the shuttle
voluntarily).

*Third,* Saini's time spent preparing for interviews, including his own research
and his "mandatory meetings" with Nowicki to prepare for and de-brief after the
interviews, were designed to make him a better candidate for jobs he wanted and
cannot be considered "hours worked."  UF 5-16, 19-21, 27, 29, 35, 51, 55-61, 64-
68.  Even the *Sullivan* decision, which was wrongly decided on the issue of
interview time, held that "Plaintiff's time spent preparing for and debriefing with
Defendant after the interviews is not compensable.  Time spent on these activities
merely made Plaintiff a better applicant, and these activities were not controlled by
Defendant in the same manner as the actual interview." *Sullivan,* 2009 WL
3353300, at \*6.

*Fourth,* Saini's time completing certain customary pre-employment
paperwork does not constitute "hours worked."  After Saini received an offer from
Experian, MRP emailed Saini a link to an online portal to complete these forms at
his convenience, which he did, signing and submitting them electronically.  UF 36-

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

21

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE
ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

39.  Saini chose to do this as part of his onboarding process with MRP so he could start work at Experian.  UF 30-35.  Filling out government-required forms like those completed by Saini are reasonable activities "designed to enable [a staffing agency] to place applicants efficiently in temporary assignments" and are not compensable as hours worked.  *See* RJN at Ex. A (*Welch-Hess v. Remedy,* Case No. GIC 806820, at *3-*4 (San Diego Sup. Ct. July 19, 2006) (holding that application, screening and recruitment time by applicants for employment with a temporary agency did not constitute compensable "hours worked" where such activities are "at most voluntarily undertaken . . . for the purpose of finding a new job")).

*Fifth,* Saini's alleged "orientation" with MRP was nothing more than two brief telephone conversations with Nowicki, one of which took place after Nowicki received Saini's resume, and the second of which took place after Saini received an offer from Experian.  That Saini voluntarily chose to learn about and utilize MRP's services to apply for jobs he wanted does not establish control.  *See Gunawan,* 997 F.Supp.2d at 1064 ("That [plaintiff] chose instead to utilize KForce's service does not transform [her] from an applicant for employment to an employee.").

*Finally,* the mere fact that Saini was placed with Experian does not constitute "hours worked" as there is no specific task associated with the placement.  To the extent Saini claims he set up an account on SAP Fieldglass, which is the system he would have used to track his time for Experian (not MRP), this 10-minute activity does not amount to "hours worked," and Saini admits that he never entered any time in SAP Fieldglass.  UF 74, 76.

Accordingly, because Saini performed no compensable work for MRP, summary judgment is proper on his second, third, fifth, and sixth claims for relief. *Gunawan,* 997 F.Supp. at 1066-1067, 1069.

Alternatively, and as with Saini's FLSA claim, if the Court declines to grant summary judgment, MRP requests an order stating that certain of the activities for which Saini seeks compensation are non-compensable under the foregoing cases.

**C.    Summary Judgment Is Proper On Saini's Fifth Claim for Failure to Pay All Wages Owed Upon Termination Because There Was A Good Faith Dispute As To Whether Saini Was Owed Any Wages.**

Saini's fifth claim for waiting time penalties under Labor Code Section 203 fails for the alternative reason that there was a good-faith dispute regarding whether Saini was owed any wages.  For Saini to recover waiting time penalties, the Court must find that MRP "willfully" failed to pay Saini wages upon termination.  *Cal. Lab. Code § 203(a)* (emphasis added).  It is well-settled that an employer is not liable for waiting time penalties when a "good faith dispute" exists over whether such wages are owed.  *See Cal. Code Regs. tit. 8, § 13520*; *see also Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due.").  A "good faith dispute" exists when "an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Cal. Code Regs. tit. 8, § 13520*.  Whether the defense is ultimately successful is inconsequential.  *Id.*

Where, as here, the law governing wage payments is unclear, such that the employer's understanding of the legal requirements, even if mistaken, was undisputedly in good faith, a failure to pay such wages is not "willful."  *See Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1201-03 (2008) (no "willful" violation where employer's position raised "complicated issues of first impression"); *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1146-47 (N.D. Cal. 2009) (granting summary judgment on Section 203 claim where good faith dispute existed as to whether plaintiff was an employee); *Reber v. AIMCO/Bethesda Holdings, Inc.*, No. SA CV07–0607 DOC (RZx), 2008 WL 4384147, at *9 (C.D. Cal. Aug. 25, 2008) (granting employer's motion for summary adjudication on Section 203 claim where good faith dispute existed as to whether employees were misclassified).

The uncontroverted facts establish that Saini never completed MRP's

onboarding process, never performed work for any MRP client, and never completed any time sheets.  UF 2-3, 5-76, 78-80.  Applicable case law supports MRP's position that the type of pre-employment activities engaged in by Saini are not compensable hours worked.  Therefore, a "good faith dispute" exists as to whether Saini was owed any wages, barring Saini's claim for waiting time penalties as a matter of law.

**D.   Summary Judgment Is Proper On Saini's Sixth Claim for Failure To Provide Accurate Wage Statements Because Any Such Failure Was Not Knowing Or Intentional.**

Saini's claim for failure to provide accurate itemized wage statements under Labor Code § 226 fails for the additional reason that MRP did not knowingly and intentionally fail to provide Saini with an itemized wage statement.  Given MRP's good faith belief that Saini was not an employee entitled to compensation for participating in interviews and other pre-employment activities, any alleged failure to furnish Saini with a wage statement cannot be deemed "knowing and intentional."  *See, e.g., Reber*, 2008 WL 4384147, at *9 (granting defendant's motion for summary judgment, "because a good faith dispute exists as to whether [plaintiffs] are exempt, [therefore, defendant] was not 'knowing and intentional' in failing to provide [Section 226] statements"); *Harris*, 656 F. Supp. 2d at 1145-46 (summary adjudication warranted on Section 226(e) claim where dispute existed as to whether plaintiff was independent contractor or employee).  Accordingly, summary judgment is proper on Saini's sixth claim for relief.

**E.   Summary Judgment Is Proper On Saini's Fourth Claim for Failure to Reimburse Expenses Because Saini Was Not Performing Compensable Work.**

In addition to his travel time, Saini contends that MRP failed to reimburse him for his mileage for traveling to interviews and the use of his personal cell phone for communicating with MRP and its clients.  BJ Dec. ¶ 2, Ex. A (VS Tr. 93:13-95:3, 102:6-103:17, 127:2-5, 161:4-14, Ex. 44 at ¶¶ 20, 24, 71).  Because, as discussed

MPA ISO MTN. FOR SUM. JUDGMENT, OR IN THE ALT., PARTIAL SUM. JUDGMENT (CASE NO. 16-CV-01534 (KES))

above, Saini's travel to interviews and use of his cell phone to communicate with MRP and participate in phone interviews do not constitute compensable work, Saini's derivative claim for expense reimbursement similarly fails to raise a triable issue.  *See Sullivan,* 2009 WL 3353300, at *7 (where time spent traveling to and from interviews was not compensable, expenses associated with such travel are not "incurred within the scope of . . . employment" and, therefore, are not subject to reimbursement under Section 2802); *see also Lewis,* 2014 WL 2516347, at *4 (Cal. Super. Jan. 2, 2014) (expenses associated with traveling to and from interviews "fall within the ordinary home-to-work commuting expenses and are not reimbursable").

### F.    Saini's Seventh Claim For Violation Of Business And Professions Code Section 17200 Fails As Derivative Of His Prior Claims.

Finally, Saini's claim that MRP committed unlawful business practices in violation of Section 17200 *et seq.* depends on a finding that one or more of Saini's preceding claims is viable.  BJ Dec. ¶ 2, Ex. A (VS Tr. 161:4-14, Ex. 44 at ¶ 81). Because Saini's first through sixth claims fail, summary judgment is proper on Saini's seventh  claim for violation of § 17200.  *Gunawan,* 997 F.Supp.2d at 1070.

## V.    CONCLUSION

MRP respectfully requests that this Court grant its motion for summary judgment and enter judgment in favor of MRP and against Saini.


Dated:  February 2, 2017                    CURLEY, HURTGEN & JOHNSRUD LLP


                                      By___/s/ Brian L. Johnsrud_____
                                         BRIAN L. JOHNSRUD
                                         Attorneys for Defendant
                                         MOTION RECRUITMENT
                                         PARTNERS, LLC