1  BRIAN L. JOHNSRUD, State Bar No. 184474
2  JENNIFER LOTZ, State Bar No. 196925
   CURLEY, HURTGEN & JOHNSRUD LLP
3  4400 Bohannon Drive, Suite 230
   Menlo Park, CA 94025
4  Telephone:650.600.5300
   Facsimile: 650.323.1002
5  E-mail:  bjohnsrud@chjllp.com
              jlotz@chjllp.com
6
7  Attorneys for Defendant
   MOTION RECRUITMENT PARTNERS, LLC
8
                UNITED STATES DISTRICT COURT
9
                CENTRAL DISTRICT OF CALIFORNIA
10

11
   VICK SAINI, individually and on          Case No. 16-CV-01534 JVS(KES)
12 behalf of all others similarly situated
   and on behalf of the general public,     **DEFENDANT MOTION**
13                                           **RECRUITMENT PARTNERS,**
                    Plaintiffs,              **LLC'S REPLY IN SUPPORT OF ITS**
14                                           **MOTION FOR SUMMARY**
            v.                               **JUDGMENT OR, IN THE**
15                                           **ALTERNATIVE, FOR PARTIAL**
   MOTION RECRUITMENT                        **SUMMARY JUDGMENT OF THE**
16 PARTNERS, LLC, a Delaware                 **CLAIMS IN PLAINTIFF VICK**
   Limited Liability Corporation, and       **SAINI'S CLASS AND COLLECTIVE**
17 DOES 1 through 10, inclusive,            **ACTION COMPLAINT, OR FOR AN**
                                             **ORDER TREATING CERTAIN**
18                  Defendants.              **FACTS AS ESTABLISHED**
19
                                             DATE:    March 6, 2017
20                                           TIME:    1:30 P.M.
                                             DEPT:    Courtroom 10C
21                                           JUDGE: Hon. James V. Selna
22
                                             Complaint Filed:    July 19, 2016
23                                                (Removed August 19, 2016)
                                             Discovery Cut-Off:  December 12, 2017
24                                           Trial Date:         March 27, 2018
25
26
27
28

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ...........................................................................1

II.   RESPONSE TO SAINI'S STATEMENT OF FACTS ....................................1

III.   LEGAL ARGUMENT ..................................................................6

     A.    Summary Judgment Is Proper On Saini's First Claim For Relief Under The FLSA. .......................................................6

         1.    Saini Fails To Raise A Triable Issue As To His Alleged Status As An MRP Employee. ..........................................6

         2.    Saini Fails To Raise A Triable Issue That He Performed Compensable Work For MRP. ......................................10

     B.    Summary Judgment Is Proper On Saini's California State Law Claims. ..............................................................14

         1.    Saini Fails To Raise A Triable Issue As To His Alleged Status As An MRP Employee. ..........................................14

         2.    Saini Fails To Raise A Triable Issue That He Performed Compensable Work For MRP. ......................................16

     C.    Saini Fails To Raise A Triable Issue As To His Fifth, Sixth, and Seventh Claims For Relief. .................................................23

     D.    Saini's Rule 56(d) Request Should Be Denied. ...................................24

IV.   CONCLUSION ...........................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

**Cases**

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................22

*Betancourt v. Advantage Human Resourcing, Inc.*
  2014 WL 4365074 (N.D. Cal. 2014) ...............................14, 15, 17, 18, 22, 23, 24

*Bonette v. California Health and Welfare Agency*
  704 F.2d 1465 (9th Cir. 1983)...........................................................9

*British Airways Bd. v. Boeing Co.*
  585 F.2d 946 (9th Cir. 1978)....................................................1, 9, 20

*Dellinger v. Science Applications International Corp.*
  2010 WL 1375263 (E.D. Va. April 2, 2010) .......................................8

*FTC v. Publ'g Clearing House*
  104 F.3d 1168 (9th Cir.1996).............................................................2

*Gunawan v. Howroyd-Wright Employment Agency*
  997 F.Supp.2d 1058 (C.D. Cal. 2014) ..........1, 6, 15, 16, 18, 19, 20, 21, 22, 23, 24

*Harris v. Vector Marketing Corp.*
  656 F. Supp. 2d 1128 (N.D. Cal. 2009) ..........................................24

*Kaiser Cement Corp. v. Fishbach and Moore, Inc.*
  793 F.2d 1100 (9th Cir. 1986)...........................................................8

*Kennedy v. Allied Mut. Ins. Co.*
  952 F.2d 262 (9th Cir. 1991)............................................................6

*Kroll v. Home Depot U.S.A., Inc.*
  2003 WL 23332905 (S.D. Ga. Aug. 20, 2003) ...............................11

*Lewis v. Adecco USA, Inc.*
  2014 WL 2516347 (Cal. Super. Jan. 2, 2014) ................................22

*Mackey v. Pioneer Nat'l Bank*
  867 F.2d 520 (9th Cir. 1989)..........................................................25

*Nance v. May Trucking Co.*
  2014 WL 199136 (D. Oregon Jan. 15, 2014) ..................................11

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

ii

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

# TABLE OF AUTHORITIES
## (cont'd)

**Page No(s).**

*Orr v. Bank of America*
  285 F.3d 764 (9th Cir. 2002)...........................................................................8

*Perez v. TLC Residential, Inc.*
  2016 WL 6143190 (N.D. Cal. Oct. 21, 2016)...................................................11

*Sullivan v. Kelly Services, Inc.*
  2009 WL 3353300 (N.D. Cal. 2009) ................................14, 15, 17, 18, 20, 23, 24

*Tatum v. City & County of San Francisco*
  441 F.3d 1090 (9th Cir. 2006)........................................................................25

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*
  321 U.S. 590 (1944) ....................................................................................11

*Tony & Susan Alamo Foundation v. Secretary of Labor*
  471 U.S. 290 (1985) ....................................................................................13

*Walling v. Portland Terminal Co.*
  330 U.S. 148 (1947) ......................................................................................6

*Williams v. Strickland*
  87 F.3d 1064 (9th Cir. 1996)..............................................................6, 7, 8, 9

*Zeinali v. Raytheon Co.*
  2011 WL 2669459 (June 29, 2011) ..............................................................9, 20

**Statutes**

29 C.F.R. § 553.221(b) ...................................................................................10

29 C.F.R. § 778.223 .......................................................................................10

29 C.F.R. § 785.7 ...........................................................................................10

29 U.S.C. § 206(a)(1) .......................................................................................8

Fed. R. Civ. Proc. § 56(d) ..............................................................................25

Fed. R. Civ. Proc. § 56(c)(4) ............................................................................1

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

iii

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

# TABLE OF AUTHORITIES
## (cont'd)

**Page No(s).**

**Rules**

Civ. L. R. 7-7 ................................................................................................ 1

Rule 56(d) ...........................................................................................24, 25

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

iv

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

## I.    INTRODUCTION

Plaintiff Vick Saini's ("Saini") Opposition fails to raise a triable issue as to his (1) alleged status as an employee of Defendant Motion Recruitment Partners, LLC ("MRP") or (2) performance of compensable work for MRP.  Saini attempts to fit a square peg into a round hole by citing two unpublished Northern District of California decisions, the reasoning of which has been rejected by this District in the *Gunawan* decision.  Those two decisions involved existing employees of a temporary agency and (unlike *Gunawan*) found certain interview time to be compensable.  The reasoning in those decisions is flawed and they are distinguishable factually because Saini was only an applicant and never an employee.  Saini never went on an interview *after* completing an assignment with an MRP client because he never *started* an assignment with an MRP client.

Saini's alleged evidence of MRP's purported "control" over him is based on conclusory assertions that lack foundation and are directly contradicted by the undisputed facts.  Saini simply cannot escape the fact that he voluntarily chose to use MRP's services to find a new job and was, at all times, free to decide whether to authorize MRP to submit him for a role, whether to interview for that role, whether to leave an interview if he decided that "this job is not for me," and whether to accept any job offered to him.  His attempt to force MRP to pay him for the time he spent trying to help him get work is both ironic and unwarranted.  Accordingly, MRP respectfully requests that the Court grant its motion.

## II.    RESPONSE TO SAINI'S STATEMENT OF FACTS

Evidentiary facts are required in opposition to a motion for summary judgment.  Fed. R. Civ. Proc. 56(c)(4); Civ. L. R. 7-7.  Mere conclusions of law are not sufficient. *See e.g., British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) *cert. denied*, 440 U.S. 981 (1979).  "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House,* 104 F.3d 1168,

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

1

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1171 (9th Cir.1996). Saini's "Statement of Facts" is anything but factual. Opp. at 2:14-7:19. Saini has re-written history, and mischaracterized his own deposition testimony, in an effort to show MRP's alleged "control" over him.[1] The true facts are as follows:

- Saini's first contact with MRP occurred when *Saini* submitted his resume for a position available through Indeed.com, after which he was contacted by Nowicki, a Workbridge recruiter. UF 5, 8-9. During initial this call (referred to by Saini as an "orientation"), Nowicki spent the majority of the time discussing Saini's background and experience, and "because [Saini was] in project management, again, it goes back to my certification in Agile. So they also drill me on the methodologies. Agile versus Waterfall, which one do you prefer, which one do you like to work with. . ." (VS Tr. 175:9-21.); BJ Dec. at ¶ 2, Ex. A (VS Tr. 148:4-149:4, 173:23-175:23); *see also* UF 8-9.[2] Saini's assertion that, during this "orientation," he "felt they had control over me, that I was their employee, and if I did not do that, I will not be able to go any further. So I felt they had control over me," is self-serving, conclusory, and lacks foundation. (VS Tr. 166:2-9.) It was Saini who reached out to MRP, and if Saini was not interested in moving forward, nothing stopped him from hanging up the phone and submitting his resume elsewhere.
- Nowicki then offered to submit Saini to a few positions that might be a good fit, informing Saini that he needed a signed "right to represent" to submit him. UF 8-13, 50-53, 55-70; *see also* Opp. at 3:17-18.
- Nowicki submitted Saini's resume without alteration other than to remove his personal contact information. UF 14. There is simply no support for Saini's

---

[1] MRP's evidentiary objections are filed herewith.

[2] Unless otherwise indicated, the cited portions of the Transcript of Vick Saini ("VS Tr.") are attached as Exhibit A to the Declaration of Marc Phelps.

speculation that "MRP would revise Plaintiff's resume according to what would look best for its client/placement." Saini testified that *he did not know* whether MRP revised his resume. (VS Tr. 92:25-93:12.)

- Nowicki provided Saini with links to the LinkedIn profiles of his interviewers and job descriptions for the positions to help position Saini for success in obtaining jobs he wanted. UF 15-21, 61-70. According to Saini, "[i]t's well known in IT. It takes a few hours minimum to be prepared for the IT [interview] because they drill you on everything." BJ Dec. ¶ 2, Ex. A (VS Tr. 93:13-94:4). This would be true whether Saini was applying for jobs on his own or through MRP. Saini wanted to land the job, so he took the time to prepare for the interviews.

- As Saini testified, MRP did not set the time and location of the interview, its clients did. "Kyle told me this is their time . . . , and that's what the client is looking for." (VS Tr. 39:22-25.) Saini's claim that he felt he had no choice but to participate in the interview is self-serving, conclusory and, quite frankly, absurd. Opp. at 5:18-24 (VS Tr. 40:17-25, 45:9-25.) Saini was already employed full-time elsewhere at the time of this interview. UF 6. He bases his assertion on an alleged need for "flexibility," yet admits that he received the date of his choice for this interview, but not the time of his choice. BJ Dec. ¶ 2, Ex. A (VS Tr. 45:22-46:6). Moreover, any lack of flexibility was because the client was "looking to move fast, and I [Nowicki] prefer you take the call because they're making the decision quickly. So there was no flexibility there that I needed." (VS Tr. 40:17-25). This was a job that Saini wanted. UF 19, 27, 29, 35. There is no evidence that Saini could not have declined the interview and, instead, either sought new work independently or continued to use MRP's services to find other positions that did not need to move as quickly. KN Dec. at ¶ 3.

1  • MRP was not present during any of Saini's interviews, and Nowicki did not

2     know the specific questions that would be asked of Saini during the

3     interview.  UF 15-26, 50-53, 61-70.  To help prepare Saini, Nowicki offered

4     general advice on "what to . . . expect[]" because "they [MRP] have history

5     with these people, how their personality is, and how they should do with the -

6     - with the -- what you call -- interview, and also what to wear -- and this type

7     of stuff too."  (VS Tr. 150:17-151:7.)  As Saini admits, Nowicki could not

8     advise him on the technical questions because "[Nowicki] won't be able to

9     answer technical questions" and Saini is "more technical than [Workbridge]."

10    UF 24 (VS Tr. 150:18-23, 151:8-14).

11 • MRP's alleged "policy" of having one of its employees meet the candidate at

12    the client interview site, brief them, and walk them into the building lacks

13    foundation and is irrelevant as Saini admits this never occurred at any of his

14    interviews.  (VS Tr. 95:4-96:2); UF 22-26, 68-70.

15 • After verbally accepting an offer with Experian, Saini went through a second

16    "orientation" with MRP which was "merely given to [him] over the phone

17    and an online portal . . . Again, once I landed the job, we went over the

18    documents, role of conduct, employee handbook, and all that."  (VS Tr.

19    145:15-21.)  Saini went on: "I did orientation once I landed a job.  Kyle went

20    with their whole employer background on the orientation on what is expected

21    of their employees, the rule of conduct, what Workbridge expects of their

22    employees and - what tasks are required."  (VS Tr. 147:17-148:2; 149:5-11.)

23 • Saini was never told he was an MRP employee during this "orientation."

24    Opp. at 6:10.  As Saini testified, Nowicki told him the following about "HR

25    process": "He gave me online user name and password, told me to go to the

26    HR paperwork to make sure I sign it online, all the disclosure, EEO forms,

27    employee conduct.  He also went over the phone with me what Experian - -

28    what Workbridge expects of employees."  (VS Tr. 61:20-62:2.)

CURLEY, HURTGEN & JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

4

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

- Saini was not required to submit any "reports" about "what was happening at Experian to MRP." Opp. at 6:16-18 (VS Tr. 62:25-63:10). Rather, Nowicki asked Plaintiff to "report back to [him] and give [him] feedback how it is - - how things going with the client and everything." *Id.* In other words, Nowicki wanted to make sure that Plaintiff was happy in his new role.

- Saini was given information about benefits he was eligible to receive *once he became an employee of MRP* and completed any other prerequisites, such as working 30 hours per work following 30 days of employment for health benefits. Opp. at 6:19-20 (VS Tr. 63:11-25); BJ Dec. ¶ 2, Ex. A (VS Tr. 59:2-24, Ex. 9); Declaration of Brian L. Johnsrud in support of Defendant's Reply ("BJ Reply Dec.") at ¶ 5, Ex. A (VS Tr. 64:1-11.)

- Saini never entered any time on SAP Fieldglass, the timekeeping system used by Experian, not MRP. (VS Tr. 62:11-24); UF 76.

- The Employee Handbook Acknowledgement signed by Saini states that it does not "vary or supersede the regular conditions of my employment." (Phelps Dec., Ex. J.) Those "regular conditions" were set forth in the Agreement for Supplying Temporary Employment Services ("PTE"), which remained in draft form, and which Saini admits he never signed. UF 43.

Thus, while Saini *would have become* an employee of MRP employee had the Experian position gone forward, once this position was cancelled, Saini's onboarding process was also cancelled. UF 30-48, 72-79.

Saini's reliance on MRP's recruiter training materials for alleged evidence of his status as an "employee" is misguided. These documents state only that recruiters are to "explain to candidates that we *will be* their employer" (as opposed to a 1099 independent contractor). Opp. at 4:16-21. In other words, assuming a candidate is placed with an MRP client in a temporary role, MRP *will be* their employer. As to Saini, it is undisputed that this never occurred because the only role he was offered was cancelled before he started work. UF 30-48, 54, 71, 73-76,

79-80; *see Gunawan v. Howroyd-Wright Employment Agency*, 997 F.Supp.2d 1058, 1064 (C.D. Cal. 2014). ("Certainly, the fact that a prospective employer has control over the wages, hours, and working conditions of the prospective employee, if hired, does not transform that applicant for employment into an employee.").

Saini's reliance on the PTE is also misplaced as it is undisputed that the PTE was never signed by Saini, and remained in draft form. UF 43; Opp. at 4:22-5:6. While Saini now claims in his Declaration that he received the PTE and understood that it applied to him, he testified at deposition that he "did not know" whether he ever even saw the PTE. BJ Dec., Ex. A (VS Tr. 81:23-82:15, Ex. 23); *see Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

Finally, MRP's business model is irrelevant to any material issue. Opp. at 5:7-17. That MRP vetted candidates before sending them out on interviews with MRP clients, and would be compensated **if** it successfully placed a candidate with a client, has no bearing on whether Saini was an MRP employee or whether he performed compensable work for MRP.

## III.  LEGAL ARGUMENT

### A.  Summary Judgment Is Proper On Saini's First Claim For Relief Under The FLSA.

#### 1.  Saini Fails To Raise A Triable Issue As To His Alleged Status As An MRP Employee.

Saini too quickly attempts to dismiss the *Williams v. Strickland,* 87 F.3d 1064, 1066 (9th Cir. 1996) decision.  In *Williams,* the Ninth Circuit determined that the plaintiff, who spent six months at an Adult Rehabilitation Center of the Salvation Army, was never an employee under the FLSA, relying on the Supreme Court's decision in *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), stating:

Yet, despite the broad scope of the FLSA, the Court articulated two limits to FLSA coverage which are relevant to this appeal. First, the Court wrote that the definition of employee was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another," and second, the FLSA does not make a person "whose work serves only his own interest an employee of another person who gives him aid and instruction." *Id* at 152, 67 S.Ct. at 641. Applying these principles, the Court held that the trainees were not employees because the railroad received no "immediate advantage" from their work. *Id.* at 153, 67 S.Ct. at 642.

*Williams*, 87 F.3d at 1066.

Here, Saini presents no evidence that there was any express or implied agreement that he would be compensated for any of his alleged "work" for MRP. UF 43, 77-78.  To the contrary, while Saini claims to have asked Nowicki whether he "should be getting paid for this," Saini concedes that Nowicki never responded and Saini never brought it up again, thus confirming the absence of any such agreement.[3]  UF 77 (VS Tr. 143:2-144:21).  Saini admits that he never signed the PTE (UF 43), and MRP's Employee Handbook, which Saini acknowledges reading, makes clear that "time worked is all time actually spent on the job performing assigned duties," which Saini admits he never did.  UF 73-80.  Saini did not pay MRP to help him find work, and MRP has received no compensation from Experian or any other client related to Saini.  UF 2, 81-82.

Moreover, Saini's alleged "work" for MRP, consisting of preparing for, traveling to, and participating in interviews for positions he was interested in, de-briefing his recruiter following those interviews, completing some standard pre-employment paperwork, and receiving an "orientation" from Nowicki about MRP's

_____

[3]  Saini's argument that this alleged discussion shows only that Nowicki "forgot to ask" is nothing more than speculation and fails to create a triable issue as to whether there was an express or implied agreement that Saini would be compensated for interview time and other pre-employment activities.  Opp. at 13:19, n. 7.  Indeed, Saini does not even attempt to dispute this fact.  UF 77.

1   services, processes, and available benefits, was primarily for Saini's interest and not

2   MRP's.  MRP, at most, gave Saini "aid and instruction" to help him obtain

3   positions he wanted.  *Williams*, 87 F.3d at 1066.

4       Saini also fails to distinguish *Dellinger v. Science Applications International*

5   *Corp.*, No. 1:10cv25 (JCC), 2010 WL 1375263, at *4 (E.D. Va. April 2, 2010).

6   Saini argues that *Dellinger* involved an FLSA retaliation claim, yet *Dellinger* based

7   its ruling on the plain statutory language which limited the Act's coverage to

8   "employees."  The minimum wage provisions of the FLSA on which Saini's FLSA

9   claim is predicated also limit coverage to an "employee."  29 U.S.C. § 206(a)(1).

10      While Saini argues that completing certain MRP forms that referred to him as

11  an "employee" as part of the onboarding process, and MRP's maintenance of these

12  forms, made him an employee, these customary pre-employment documents do not,

13  and cannot, create a triable issue as to Saini's employment status.  Opp. at 9:19-28,

14  14:23-25.  Filling out government-required forms like those completed by Saini are

15  reasonable activities "designed to enable [a staffing agency] to place applicants

16  efficiently in temporary assignments" and do not transform an applicant into an

17  employee.  *See* RJN at Ex. A (*Welch-Hess v. Remedy*, Case No. GIC 806820, at *3-

18  *4 (San Diego Sup. Ct. July 19, 2006) (holding that applicants for employment

19  through a temporary agency were not employees unless they were on assignment

20  with a client of the agency)).

21      Saini's reliance on conclusory, inadmissible hearsay statements by Nowicki

22  that Saini was "already an employee of Workbridge" also cannot raise a triable

23  issue as to his alleged employment status.  Opp. at 9:21, 14:25-27 (citing VS Tr. at

24  100:4-11); *see Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) ("To

25  defeat summary judgment, [plaintiff] 'must respond with more than mere hearsay

26  and legal conclusions.'") (quoting *Kaiser Cement Corp. v. Fishbach and Moore,*

27  *Inc.,* 793 F.2d 1100, 1104 (9th Cir. 1986)).  Likewise, Saini's contention that he was

28  told his background check was complete and MRP "had all the paperwork that it

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

8

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1   needed" is also inadmissible hearsay, and contradicted by admissible evidence

2   showing that Saini's background check was cancelled, his I-9 Form was never

3   completed because he did not go to Workbridge's offices to provide the supporting

4   documentation, and he never signed the PTE, all of which were required to

5   complete MRP's onboarding process.  UF 30-48.  Further, the "take it or leave it"

6   pay rate for the Experian role, and MRP's role in facilitating interview scheduling

7   also fail to raise a triable issue as to whether Saini was an employee under the

8   *Williams* factors.  Opp. at 9:19-28.

9        Finally, Saini's testimony that he was not employed between Centric Sky and

10  his current role only further reinforces the conclusion that Saini was a mere

11  applicant.  (VS Tr. at 19:2-24.)  This testimony shows that even Saini did not

12  consider MRP to be his employer because his only interactions with MRP were as a

13  placement agency helping him find work.  UF 1-2, 5-82.  Saini's subsequent

14  testimony referring to himself as a MRP employee is self-serving, conclusory, lacks

15  foundation, and cannot create a triable issue of fact as to Saini's actual status.

16  *British Airways,* 585 F.2d at 952 (9th Cir. 1978); *Zeinali v. Raytheon Co.,* 2011 WL

17  2669459 at *4 (S.D. Cal., July 7, 2011);* Opp. at 10:15-22 (citing VS Tr. at 61:20-

18  62:2, 66:20-22, 100:1-3, 124:23-125:5, 138:2-5, 140:3-9, 141:1-4, 145:7-8, 146:1-2,

19  149:17-19, 152:7-8, 159:22-23, 160:4-5, 166:6-7, 169:5-6).

20       Saini next argues that he was an employee on the factors outlined in *Bonette v.*

21  *California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir. 1983).  In

22  *Bonette,* however, the issue was not whether the plaintiff was an employee or

23  applicant, but rather, whether the plaintiff was jointly employed by two separate

24  entities.  In evaluating that issue, the court looked at "whether the alleged employer

25  (1) had the power to hire and fire the employees, (2) supervised and controlled

26  employee work schedules or conditions of employment, (3) determined the rate and

27  method of payment, and (4) maintained employment records."  *Id.*  In this case, the

28  issue is not whether MRP was a joint employer, but instead, whether Saini was ever

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

9

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

an employee in the first place.  But even if the *Bonette* factors were applied, Saini's evidence, to the extent admissible, establishes nothing more than that he *would have become* MRP's employee had he completed the onboarding process and started work with Experian, which indisputably never occurred.  UF 30-79.  Accordingly, summary judgment is proper on Saini's first claim for relief.

## 2.   Saini Fails To Raise A Triable Issue That He Performed Compensable Work For MRP.

Further, even if the Court determines there is any triable issue as to whether Saini was an MRP employee (he was not), Saini fails to raise a triable issue as to whether he performed any compensable work for MRP.  Notably, Saini fails to cite to a single case holding that (1) preparing for, traveling to, and attending telephone and in-person interviews with MRP clients; (2) filling out pre-employment paperwork; (3) receiving an "orientation" from Workbridge (which consisted of a brief telephone overview of Workbridge's services, processes, and procedures during an introductory call with Nowicki and, subsequently, after receiving an offer from Experian); (4) attending "mandatory meetings" (specifically, calling his recruiter before and after interviews to prepare and de-brief); and (5) being placed with Experian, though no substantive work was performed, constitute compensable "work" under the FLSA.  The Court should not make new law on this point.

Saini argues that these activities constitute compensable "work" because he was allegedly "required to be on duty . . . or at a prescribed workplace" and was "suffered or permitted to work whether or not he is required to do so."  Opp. at 11:5, n. 5 (citing 29 C.F.R. §§ 778.223, 553.221(b), 785.7).  This circular conclusion begs the question of whether Saini was "on duty" and performed "work" while engaging in these activities.  MRP's cases confirm that these types of activities, which are distinct from the actual IT project management duties Saini would have performed had he started working for one of MRP's clients, are non-compensable under the FLSA.  *See Kroll v. Home Depot U.S.A., Inc.,* No. Civ.A

1  CV202-113, 2003 WL 23332905, at *5 (S.D. Ga. Aug. 20, 2003) (finding interview

2  time non-compensable); *Nance v. May Trucking Co.,* No. 3:12–cv–01655–HZ,

3  2014 WL 199136, *5 (D. Oregon Jan. 15, 2014) (finding orientation time, which

4  included drug testing, safety testing, and completing paperwork, non-compensable).

5      The proper focus in evaluating whether Saini performed compensable work

6  is whether the activities at issue were "controlled or required by the employer <u>and</u>

7  pursued necessarily and primarily for the benefit of the employer and his business."

8  *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64

9  S.Ct. 698, 88 L.Ed. 949 (1944) (emphasis added; footnote omitted).  Courts in the

10  Ninth Circuit examine: (1) whether the defendant received an "immediate

11  advantage" from the plaintiff's alleged work; and (2) whether there was an express

12  or implied agreement for compensation.  *Nance,* 2014 WL 199136, *5.

13      While Saini attempts to dispute this framework, his own authority is entirely

14  consistent with these factors, and adds two other factors.  *See Perez v. TLC

15  Residential, Inc.,* 2016 WL 6143190, at *3 (N.D. Cal. Oct. 21, 2016) (considering

16  "(1) whether 'any express or implied compensation agreement' exists between

17  defendants and their house parents; (2) whether the house parents work 'for their

18  own advantage' or for defendants' 'immediate advantage'; (3) whether and to what

19  extent the house parents are economically dependent on defendants; and (4)

20  whether and to what extent the house parents' work, and their relationships with

21  defendants, contemplates rehabilitation rather than compensation.").

22      Taking these factors together, Saini performed no compensable work for

23  MRP.  First, there was no agreement, express or implied, that Saini would be

24  compensated for his time engaging in pre-employment activities.  UF 43, 77-78.

25  Saini admits that Nowicki made no such representation, and MRP's Employee

26  Handbook, which Saini read, makes clear that "time worked is all time actually

27  spent on the job performing assigned duties," which Saini admits he never did.  UF

28  73-80, 77 (VS Tr. 143:2-144:21).  Saini further admits that he never signed a PTE

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

11

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1  with MRP.  UF 43.

2       Second, any job Saini obtained through MRP would have been primarily for

3  his own benefit.  Saini was applying for jobs he was interested in with

4  "technologies that [he] liked to be involved with" and stood to receive valuable

5  compensation if he was hired.  UF 5-29, 35, 49-70.  Saini did not pay MRP to help

6  him find a job, and MRP would not receive any compensation unless and until

7  Saini performed work for a MRP client, which he never did.  UF 2, 40-48, 73-82.

8  Incidental activities, such as Saini's research prior to the interviews and the time

9  spent on the phone with Nowicki to prepare for and de-brief from the interviews,

10  were also for Saini's own benefit to make him a better-prepared candidate for jobs

11  he wanted.  According to Saini, "[i]t's well known in IT.  It takes a few hours

12  minimum to be prepared for the IT [interview] because they drill you on

13  everything."  BJ Dec. ¶ 2, Ex. A (VS Tr. 93:13-94:4).

14       While conceding the benefits he received from MRP (Opp. at 14:8-10,

15  stating: "[t]his is not to say that this process wouldn't also benefit Saini"), Saini

16  argues that MRP received various intangible benefits from submitting him to

17  Experian, allegedly enhancing its relationship with Experian by sending them a

18  qualified candidate and, further, that Saini's claimed "lengthy debriefing

19  conversations with Nowicki would have given MRP unique insight into the

20  interview process at Experian and provided valuable guidance to impart to future

21  placement candidates prior to their interviews" leading to "a greater chance that

22  those candidates would receive a position, which would improve MRP's bottom

23  line."  Opp. at 13:1-19.  Saini's argument fails to demonstrate that MRP received

24  any "immediate advantage" from Saini's efforts to find work.  Indeed, even by

25  Saini's own reasoning, no tangible benefit would accrue to MRP unless and until a

26  candidate was placed with Experian, resulting in compensation to MRP.  UF 81.

27  Thus, there can be no genuine dispute that any "work" Saini claims to have

28  performed was more for his own benefit than any potential future benefit MRP may

1  have derived.  Moreover, such "work" is the same preparation and interview time

2  any candidate applying for any job would have put in to land a job they wanted.

3  That MRP facilitated this process and helped Saini shine (at no cost to Saini nor

4  any fee accruing to MRP) should not transform Saini from a job applicant into an

5  employee performing compensable work.

6       Third, there is no evidence that Saini was "economically dependent" on

7  MRP.  During his first round of interviews with Experian, Saini was employed full-

8  time by Centric Sky.  UF 6.  After the position with Experian was cancelled, Saini

9  chose to continue seeking opportunities through MRP, but also worked with other

10  agencies and ultimately found a position on his own.  UF 40, 49-80; BJ Reply Dec.

11  at ¶ 5, Ex. A (VS Tr. 54:16-55:12, 91:25-92:4).  Thus, he was never "economically

12  dependent" MRP, nor could he be as there was no agreement that he would be paid

13  for any of his time.  UF 43, 77-78.

14       Finally, the fourth factor of whether rehabilitation or compensation was

15  contemplated by the relationship is irrelevant, however, even if it was applicable,

16  Saini has no evidence that any compensation was contemplated unless and until he

17  began working for one of MRP's clients, which never occurred.  UF 43, 77-78.

18       Saini's reliance on *Tony & Susan Alamo Foundation v. Secretary of Labor,*

19  *471 U.S. 290 (1985)* for the proposition that he performed compensable work is

20  misplaced as, in that case, the defendant was a nonprofit religious organization that

21  derived its income largely from the operation of commercial businesses staffed by

22  "associates," most of whom were drug addicts, derelicts, or criminals before their

23  rehabilitation by the Foundation.  These "associates" received no cash salaries, but

24  were provided food, clothing, shelter, and other benefits.  *471 U.S. at 292.*  Some

25  had been fired for poor performance and were prohibited from receiving food if

26  they were absent from work.  *Id.* at 301, n. 22.  Many were dependent on the

27  Foundation, having worked there for long periods up to several years, and some

28  having worked as much as 10 to 15 hours per day, 6 to 7 days per week.  *Id.* at 301.

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

13

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

On these facts, the Supreme Court determined that the district court did not err in finding that the associates were employees. *Id.* This case is nothing like *Tony*. Here, Saini performed no work from which MRP derived any income and Saini's alleged "work" for MRP was nothing more than brief telephone discussions with his recruiter, preparing for, traveling to, and participating in interviews with MRP's clients, and completing some standard pre-employment paperwork. UF 5-82. Each interaction between MRP and Plaintiff was brief in duration and occurred intermittently over the course of approximately four months. *Id.*

Saini cannot fit a square peg into a round role. He was a job applicant interviewing for positions he wanted that would have compensated him, not an employee performing compensable work. Accordingly, summary judgment is proper on Saini's first claim for relief. Alternatively, if the Court declines to grant summary judgment, MRP requests an order stating that one or more of the activities for which Saini seeks compensation are non-compensable as a matter of law.

**B.      Summary Judgment Is Proper On Saini's California State Law Claims.**

      **1.      Saini Fails To Raise A Triable Issue As To His Alleged Status As An MRP Employee.**

For the same reasons discussed in connection with his FLSA claim, Saini also fails to raise a triable issue as to his status as an MRP employee under California law. Saini attempts to distinguish *Welch-Hess v. Remedy Temporary Services,* which held that applicants for employment were not employees of the temporary agency unless they were on assignment with a client, on the basis that it predates the Northern District's unpublished *Betancourt* and *Sullivan* decisions. This is a classic distinction without a difference. Neither *Sullivan* nor *Betancourt* "found that an employment relationship existed based on paperwork and agreements between the job seeker and staffing agency." Opp. at 15:5-18. Rather, in *Sullivan v. Kelly Services, Inc.*, No. C 08-3893 CW, 2009 WL 3353300 (N.D. Cal. 2009), the court determined that "Plaintiff's employment relationship with

1  Defendant began on . . . .her first day of her first temporary assignment with

2  Defendant's customer."  *Sullivan,* 2009 WL 3353300, at *1.  Here, Saini admits he

3  **never** had a first day with any MRP client because the only position he was offered

4  was cancelled before he started work.  UF 30-48, 54, 71, 73-76, 78-80.

5      In *Betancourt,* the agency required its candidates to complete the full

6  onboarding process to become employees *before* being sent out on any interviews.

7  *Betancourt v. Advantage Human Resourcing, Inc.*, Case No. 14-cv-01788-JST, 2014

8  WL 4365074, at *1 (N.D. Cal. 2014) ("Advantage interviews prospective workers,

9  sends them to a 'new hire' orientation, has new hires sign a form that acknowledges

10  that the parties are entering into an employment arrangement, and requires them to

11  complete traditional employment paperwork, including W–4 and I–9 forms.  Upon

12  becoming an Advantage 'employee,' a person becomes eligible to interview for

13  positions with Advantage's clients.").  In sharp contrast, Saini did not receive or fill

14  out paperwork here until after he was offered a job.  UF 30-39.  He did not become

15  an "employee" of MRP before being sent out on interviews.  Indeed, Saini did not

16  even receive any of MRP's pre-employment paperwork until *after* he received and

17  verbally accepted an offer from Experian.  BJ Dec. at ¶ 2, Ex. A (VS Tr. 161:4-14,

18  161:22-162:21, 166:23-167:5, Ex. 44 at ¶¶ 17-19.)  And, even then, he never

19  completed the full onboarding process because, among other things, his I-9 Form

20  was incomplete and he never signed the PTE.  UF 30-48, 73-79.

21      Moreover, the holding in *Welch-Hess* is consistent with the Central District's

22  ruling in *Gunawan*, in which the court held that, as a job applicant through a

23  temporary agency, plaintiff "was not an employee . . . performing compensable

24  work."  *Gunawan,* 997 F.Supp.2d at 1063.  Like in the plaintiff in *Welch-Hess* who

25  agreed that the agency was only her employer when she was on assignment, Saini

26  reviewed and acknowledged MRP's Employee Handbook, which states that "time

27  worked is all time actually spent on the job performing assigned duties."  UF 78.

28      For all of these reasons, Saini cannot raise a triable issue as to his alleged

15

status as an MRP employee and summary judgment is proper on his second through seventh claims for relief under California law.

### 2. Saini Fails To Raise A Triable Issue That He Performed Compensable Work For MRP.

Saini also fails to raise a triable issue as to whether he performed any compensable work under California law. *Gunawan* is directly on point and disposes of Saini's claim that he is entitled to compensation for interviews and other pre-employment activities. Like the plaintiff in *Gunawan,* the undisputed facts demonstrate that Saini was not required to use MRP's services to find work but, rather, reached out to MRP to apply for a job he wanted. UF 5-7. The client decided whether to interview Saini, the manner of the interview (whether by phone or in person), the date and time of the interview, the length of the interview, the interviewers, and the questions to be asked. UF 3, 15-27, 50-53, 61-70. MRP did not attend or participate in any of the interviews or direct Saini's actions during the interview (nor could it as Saini admits that most of the questions asked were "technical questions" and "I'm more technical than [Workbridge]"). *Id.; see also* UF 24 (VS Tr. 149:23-150:23, 151:8-14). Saini does not dispute that he was free to determine where and how to participate in the telephone interviews, when and how to travel to the in-person interviews, how to respond to the questions asked, and whether to terminate the interview process. UF 15-27, 50-53, 61-70. Nowicki needed a "right to represent" to even submit Saini for consideration, and Saini admits that he could have terminated the interview process at any time if he felt "this job is not for me." UF 10-13, 26 (VS Tr. 145:3-10), 55-60. *See Gunawan,* 997 F.Supp.2d at 1063.

As anticipated, Saini attempts to distinguish the published *Gunawan* decision by relying on two unpublished Northern District cases, *Sullivan,* 2009 WL 3353300, and *Betancourt,* 2014 WL 4365074, neither of which are persuasive.

*First,* Saini claims that he went on three interviews with MRP clients after

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

16

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1  completing certain onboarding paperwork with MRP and allegedly being told by

2  his recruiter that he was an MRP employee.  According to Plaintiff, the completion

3  of this paperwork makes him like plaintiff in *Sullivan*, whose interview time was

4  deemed compensable. Opp. at 17:8-18:7.  In *Sullivan,* however, the court did not

5  rely upon the completion of paperwork in holding that the plaintiff was an

6  employee, but, rather, on the fact that she had completed an assignment with a

7  client of the temporary agency, which Saini admittedly did not.  *Sullivan,* 2009 WL

8  3353300, at *1 ("Plaintiff's employment relationship with Defendant began on . . .

9  .her first day of her first temporary assignment with Defendant's customer."); *see*

10 *also* UF 30-48, 54, 71, 73-76, 78-80.  Thus, the fact that Saini completed certain

11 pre-employment paperwork does not make him an employee under *Sullivan.*

12      Further, MRP's Employee Handbook makes clear that that "time worked is

13 all time actually spent on the job performing assigned duties," and Saini admits that

14 he never performed any project management duties for Experian or any other MRP

15 client.  UF 78-79.  Notably, while the agency in *Sullivan* had a similar policy, the

16 court found that it could not rely on such a policy in arguing that the plaintiff was

17 not an employee in between assignments because, in prior litigation between

18 plaintiff and the agency, the agency asserted that plaintiff remained its employee

19 between assignments to avoid liability for not paying plaintiff her wages upon on

20 the termination of each assignment and, therefore, "[d]efendant cannot now change

21 course and deny that Plaintiff was its employee between assignments." *Sullivan,*

22 2009 WL 3353300, at *1.  MRP has made no such assertion.

23      *Betancourt* involved a distinguishable process from that at issue herein in

24 which the agency required the applicant to become an employee *before* being sent

25 out on any interviews.  *Betancourt,* 2014 WL 4365074.  Here, as noted above, Saini

26 did not become an "employee" of MRP before being sent out on interviews and

27 never completed the full onboarding process.  BJ Dec. at ¶ 2, Ex. A (VS Tr. 161:4-

28 14, 161:22-162:21, 166:23-167:5, Ex. 44 at ¶¶ 17-19); UF 30-48, 73-79.

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

17

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1    As to the purported level of alleged "control" exercised over the interview

2  process, substantially similar facts were analyzed in *Sullivan* and *Betancourt* as in

3  *Gunawan,* with the Northern District concluding that sufficient control existed, and

4  the Central District holding that "[i]n going to the interview . . ., [plaintiff] was not

5  under [the agency's] control such that her time was not her own." *Gunawan,* 997

6  F.Supp.2d at 1063.  Indeed, the Central District expressly rejected the reasoning in

7  *Sullivan,* stating that "the Court is unpersuaded by *Sullivan*'s implicit finding that an

8  individual who voluntarily attends an interview arranged by a temporary services

9  agency is under the control of the temporary services agency such that he or she can

10  be considered to perform compensable work." *Gunawan,* 997 F.Supp.2d at 1065.

11    Here, as in *Gunawan,* the undisputed facts support a finding that Saini

12  voluntarily participated in the interviews and application process.  Nowicki could

13  not even submit Saini for consideration without a signed "right to represent" and,

14  while Saini may have been given limited choices as to interview times (as he would

15  have in any competitive situation), Saini admits that he was able to choose the date

16  of his interviews and he was even able to reschedule an interview with Experian

17  when he had a conflict with another interview outside of MRP.  BJ Dec. ¶ 2, Ex. A

18  (VS Tr. 45:22-46:6); *see also* UF 64-68.  Notably, neither the *Sullivan* nor

19  *Betancourt* decisions involved similar facts showing the applicant's level of control

20  and involvement in the submission and interview scheduling process.  Indeed, in

21  *Sullivan,* the agency even decided "which of its temporary employees to send on an

22  interview," which is not true here as the client made those decisions.  *Sullivan,* 2009

23  WL 3353300, at *4; *see also* UF 3, 8-30, 50-71.

24    Moreover, Saini's position on this issue is internally inconsistent.  On the one

25  hand, Saini claims that completing paperwork made him an employee, yet on the

26  other, he contends that MRP's "control" over the interview and application process

27  made him an employee.  Opp. at 17:15, n. 9, 18:3-7.  According to Saini, this alleged

28  "control" began the instant he submitted his resume and listened to Nowicki's pitch

CURLEY, HURTGEN &
JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

18

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

1  about Workbridge, yet the paperwork did not come until months later when Plaintiff

2  was verbally offered and accepted a role with Experian that was then cancelled.  UF

3  30-48.  This inconsistency only highlights the fact that Saini was never an employee,

4  nor was he subject to MRP's control.

5      *Second*, Saini claims that the "detailed substantive orientations and

6  debriefings that enabled Defendant to present more thoroughly vetted candidates to

7  its clients, and thereby market itself as a 'partner' in the talent - - and to obtain

8  information about its clients' needs and interview practices to pass to future

9  candidates" establishes a greater level of "control" than *Gunawan*.  However, a

10  similar argument was rejected in *Gunawan*.  The plaintiff attempted to paint herself

11  as a "brand representative" for the agency and claimed that she conferred a benefit

12  on it by going to interviews.  In rejecting this argument, the court stated:

> [N]o reasonable interpretation of the facts would allow for a
> determination that Ms. Gunawan's activity was undertaken primarily
> for the benefit of KForce. Like any applicant for a job, Ms. Gunawan
> chose to attend the TRG interview. While in her papers and at the
> hearing, Ms. Gunawan attempts to couch herself as a "brand
> representative" for KForce, who conferred the benefit of spreading
> KForce's name to client employers, such argument belies the key fact
> that Ms. Gunawan was "interviewing for employment" with TRG—
> that is, she was interviewing for a job that she wanted and that would
> compensate her for her work. That her attendance at the interview, a
> necessary condition of many employment relationships, also may have
> conferred some attenuated benefit to KForce is not enough to make
> Ms. Gunawan an employee of KForce at the time of the interview.

23  *Gunawan,* 997 F.Supp.2d at 1064.

24      Here, likewise, the alleged "orientations" and debriefings (all of which were

25  short and by phone), do not establish "control."  As in *Gunawan,* "[n]othing

26  suggests that if [Saini] did not want [MRP] to . . . act as an intermediary . . ., [he]

27  could not simply have refused [MRP's] placement service, and instead, attempted

28  to secure a position . .  .through [his] own efforts. That [he] chose instead to utilize

CURLEY, HURTGEN & JOHNSRUD LLP
COUNSELORS AT LAW
MENLO PARK

19

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

1  [MRP's] service does not transform [Saini] from an applicant for employment to an

2  employee." *Gunawan,* 997 F.Supp.2d at 1064.  Further, as to "debriefings," even

3  the *Sullivan* case, which was wrongly decided on the issue of interview time, held

4  that "Plaintiff's time spent preparing for and debriefing with Defendant after the

5  interviews is not compensable.  Time spent on these activities merely made Plaintiff

6  a better applicant, and these activities were not controlled by Defendant in the same

7  manner as the actual interview." *Sullivan,* 2009 WL 3353300, at *6.

8      *Third,* Saini contends that "the control criteria the *Gunawan* court found

9  lacking – that turning down an interview would have adverse consequences with the

10  placement company, that the agency had control over the questions and answers in

11  the interview, and that the agency had control over the length of the interview and

12  the way the candidate should act during it – are all disputed facts here."  Opp. at

13  19:11-22.  Saini's position mischaracterizes the undisputed evidence.

14      First, Saini's contention that he "believed that turning down an interview

15  would terminate his status as an MRP employee" lacks evidentiary support and is

16  contradicted by the undisputed facts.  Saini's own testimony (answering "yes" to

17  the question "so you felt like you had no choice but to participate in the telephone

18  interview?" VS Tr. 40:17-19) is self-serving, conclusory, and lacks foundation and

19  cannot raise a triable issue.  *See British Airways,* 585 F.2d at 952 (9th Cir. 1978);

20  *Zeinali,* 2011 WL 2669459 at *4.  The undisputed facts demonstrate that Saini was

21  able to reschedule an interview with Experian when he had a conflict with another

22  interview outside of MRP.  UF 64-68.  Nowicki confirmed that Saini "could accept

23  or decline an interview request based on his interest in the position and availability

24  for the interview.  Had Mr. Saini declined an interview request, I would have

25  continued working with him to find other roles based on his interest."  KN Dec. ¶ 3.

26      Second, Saini's claim that he was told what kind of questions would be

27  coming, how he should answer them, and what he should wear to the interview also

28  fails to raise a triable issue.  Saini testified only that Nowicki provided insight into

"what kind of questions are going to be coming" "on the business side of things," not the technical questions because "[Nowicki] won't be able to answer technical questions." (VS Tr. 150:18-151:14). This distinction is critical because most of the questions asked during Saini's interviews were "technical questions." UF 24. Moreover, Saini does not dispute that MRP's clients decide "the questions to be asked" at interviews, confirming MRP's lack of control. UF 3. Indeed, in confirming Saini's first in-person interview with Experian, Nowicki stated: "I wish I had more information regarding the interview but I an un-able to get any other notes/feedback. I know that you will do just fine as long as you discuss prior work projects/success and have a positive outgoing attitude." UF 21 (VS Tr. at Ex. 6). Finally, as to advice on how to dress, the *Gunawan* court rejected the notion that this type of general advice evidenced control. *Gunawan*, 997 F.Supp.2d at 1064 ("And much like any potential employer, KForce suggested to Ms. Gunawan that she should dress professionally and arrive early to the interview.").

Third, Saini's claim that MRP set the time, date, and length of the interviews is contradicted by his own testimony and the undisputed facts. UF 15-16, 20-21, 50, 61, 64-68; *see also* VS Tr. 39:22-25 ("Kyle told me this is their time . . . , and that's what the client is looking for.") To the extent interviews went beyond their anticipated lengths, this too was dictated by the client due to availability of the interviewers and discussions running over schedule. BJ Dec. ¶ 2, Ex. A (VS Tr. 45:9-13 ["Kyle told me it will be two hours. That would be the interview time, but it ended up being way more than two hours."], 47:23-51:2); UF 20-26. As MRP was not even present at these interviews, it is impossible to see how MRP could have controlled the length of any interview. UF 15-26, 50-70. Thus, there are no disputed facts as to other potential "control" criteria discussed in *Gunawan*.

Saini then argues that his alleged "work" meets the "suffer or permit" test. The court in *Gunawan* rejected this alternative test, finding it was "not easily translated outside of the factual context in which it was developed" and determining

1   that "[t]he focus on control then is an appropriate inquiry in determining whether a

2   compensable employment relationship was formed when [plaintiff] attended the . . .

3   interview." *Gunawan*, 997 F.Supp.2d at 1064.

4        Moreover, other courts have expressly rejected the notion that interview time

5   can even be considered work in the first place where it is "clearly distinct from the

6   work to be performed if and after the interviewee is placed in a temporary

7   assignment." *See* RJN at Ex. B (*Lewis v. Adecco USA, Inc.,* 2014 WL 2516347, at

8   *3 (Cal. Super. Jan. 2, 2014)  (granting motion for summary judgment on claims

9   brought by applicant of a temporary agency for alleged failure to pay minimum

10  wage, waiting time penalties, reimbursement of expenses, failure to provide

11  accurate itemized wage statements, and violation of §17200)).  Saini's attempt to

12  distinguish *Lewis* based on the holding in *Betancourt* is unavailing as *Betancourt*

13  was decided in the context of a motion to dismiss, not a motion for summary

14  judgment like *Lewis,* and held only that plaintiff had plead "enough facts to state a

15  claim to relief that is plausible on its face." *Betancourt,* 2014 WL 4365074, at *1

16  (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Moreover, there

17  is no support for Saini's assertion that his interview "consist[ed] of Saini giving

18  answers to questions provided to him by Defendant."  Opp. at 21:18-22.  As noted

19  above, while MRP may have given Saini some general guidance on what to expect

20  in the interview based on prior dealings with Experian, Nowicki did not know the

21  specific questions that would be asked, nor could Nowicki direct Saini on how to

22  answer technical questions.  UF 3, 21, 24.

23       Finally, Saini claims that his alleged "work" meets the common law test

24  which relies on "control of details," an alternative test which was only at issue in

25  *Betancourt* and was rejected by *Gunawan.*  Opp. at 20:8-21:22; *see also Gunawan,*

26  997 F.Supp.2d at 1064.  This test, which examines factors such as "(1) whether the

27  worker engaged in a distinct occupation or business; (2) whether, considering the

28  kind of occupation and locality, the work is usually done under the alleged

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

22

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES))

employer's direction or without supervision; (3) the skill required to do the work; (4) whether the employer or the worker supplied the instrumentalities, tools, and place of work; (5) the length of time the worker's services are to be performed; (6) whether payment is by time or by job; (7) whether the work is part of the employer's regular business; and (8) whether the parties believe they are creating an employer-employee relationship," is not particularly helpful in determining whether Saini was a job applicant or employee, and was only relied upon in ruling on a motion to dismiss. *Betancourt,* 2014 WL 4365074, at *5-*6. Because Saini has failed to raise a triable issue that he performed compensable work, summary judgment is proper on his second through seventh claims for relief.

Alternatively, if the Court declines to grant this motion, MRP requests an order holding that the various activities for which Saini seeks compensation are non-compensable. Indeed, even the cases upon which Saini relies hold only that certain interview time may be compensable (a position rejected by the Central District in *Gunawan*), and reject Saini's claims that preparation time, debriefing time, and travel time are also compensable. *See Sullivan,* 2009 WL 3353300, at *5-*6. Saini also fails to cite to a single case holding that alleged "orientation" time, time spent completing pre-employment paperwork, or merely being placed with a client without performing work for that client is compensable. Opp. at 22:1-13.

### C.    Saini Fails To Raise A Triable Issue As To His Fifth, Sixth, and Seventh Claims For Relief.

Saini argues that there are triable issues as to whether MRP acted in good faith under Labor Code Section 203 in failing to pay Saini wages for his pre-employment activities because the *Sullivan* and *Betancourt* decisions were available to MRP. Opp. at 22:14-23:3. This argument ignores the fact that *Gunawan,* a published case in the Central District, reached the opposite conclusion, finding such interview time non-compensable. As MRP indisputably had a good faith belief that Saini was not its employee and was not entitled to be paid for interview time or other activities,

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

23

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

1  summary judgment is proper on Saini's fifth claim for relief.  *See Harris v. Vector*

2  *Marketing Corp.*, 656 F. Supp. 2d 1128, 1146-47 (N.D. Cal. 2009).

3       For the same reasons, Saini fails to raise a triable issue as to whether MRP

4  acted knowingly and intentionally in failing to provide him with an itemized wage

5  statement.  Opp. at 23:4-24:5.  This is not a case in which a wage statement was

6  provided that was deficient, but, rather, one in which no wage statement was issued

7  because Saini was not an employee and performed no compensable work.  *Harris,*

8  656 F. Supp. 2d at 1145-46.  Finally, because each of Saini's preceding claims for

9  relief fail, his derivative claim for violation of §17200 likewise fails.  *Gunawan,* 997

10  F.Supp.2d at 1070.

11      **D.**    **Saini's Rule 56(d) Request Should Be Denied.**

12       Saini requests relief under Rule 56(d), claiming that MRP filed its motion

13  early, and he has not had the opportunity to gather the evidence needed to oppose

14  the motion.  Opp. at 24:14-25:18.  Neither argument has merit.  Saini filed his

15  Complaint nearly seven months ago, on July 19, 2016.  (VS Tr. 161:4-14, Ex. 44.)

16  On November 4, 2016, the parties filed a Joint Status Report in which MRP

17  indicated its intent to move for summary judgment promptly.  (Dkt. 14.)  On

18  November 7, 2016, the parties exchanged Initial Disclosures, with MRP producing

19  247 pages of documents related to Saini's interactions with MRP on December 19,

20  2016.  BJ Reply Dec. at ¶¶ 3-4.  On December 20, 2016, MRP took Saini's

21  deposition.  *Id.* at ¶ 5.  Saini waited until January 6, 2017, some two months after

22  Initial Disclosures, to even serve a request for production of documents and special

23  interrogatories.  *Id.* at ¶ 6, Exs. B-C.  MRP responded to requests related to Saini,

24  but objected to Saini's class discovery on various grounds  *Id.* at ¶ 7.  To date, Saini

25  has not requested the depositions of any of MRP's witnesses.  *Id.* at ¶ 8.

26      To obtain a continuance for additional discovery under Rule 56(d), Saini

27  must show "the specific facts that further discovery would reveal, and explain why

28  those facts would preclude summary judgment," as well as the specific reasons why

Curley, Hurtgen &
Johnsrud llp
Counselors At Law
Menlo Park

24

REPLY ISO MTN. FOR SUM. JUDGMENT, OR IN
THE ALT., PARTIAL SUM. JUDGMENT
(CASE NO. 16-CV-01534 (KES)

the evidence was not discovered or obtain earlier in the proceedings and the steps or procedures by which the opposing party proposes to obtain the evidence within a reasonable time. *Tatum v. City & County of San Francisco,* 441 F.3d 1090, 1100-1101 (9th Cir. 2006); *Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520, 524 (9th Cir. 1989); Fed. R. Civ. Proc. 56(d).  Saini fails to meet this standard.

Saini fails to, and cannot show what specific facts further discovery would reveal and explain how those facts would preclude summary judgment.  While Saini contends that MRP's discovery responses are "inadequate and evasive," he does not cite to a single request that would have any bearing whatsoever on the instant motion, nor could he as Saini's discovery relates almost entirely to class issues.  BJ Reply Dec. at ¶ 6, Exs. A-B; Phelps Dec. at ¶ 18.  Saini also fails to identify which of MRP's corporate representatives he would intend to depose or discuss how the evidence he would hope to obtain would impact this motion.  Phelps Dec. at ¶¶ 18-19.  Indeed, all of the alleged "evidence" Saini intends to seek is already argued in his Opposition.  Phelps Dec. at ¶ 19.  Accordingly, Saini's request for relief under Rule 56(d) should be denied.  There is no reason the Court cannot rule on Defendant's motion based on the existing record, which fully addresses Saini's own dealings with MRP.

## IV.    CONCLUSION

Accordingly, MRP respectfully requests that this Court grant its motion for summary judgment and enter judgment in favor of MRP and against Saini.

Dated:  February 17, 2017          CURLEY, HURTGEN & JOHNSRUD LLP

By    /s/ Brian L. Johnsrud
    BRIAN L. JOHNSRUD
    Attorneys for Defendant
    MOTION RECRUITMENT
    PARTNERS, LLC